# CHARLESTON,

## Dickey v. Smith.

Submitted September 15, 1896—Decided December 16, 1896.

1. SET-OFF—AMOUNT OF SET-OFF—JURISDICTION OF COURT OF APPEALS.

   Where the plaintiff's demand is not controverted, but the defendant files and relies on a *bona fide* set-off, exceeding one hundred dollars in amount, which is wholly disallowed, the amount of such set-off determines the jurisdiction of this Court.

2. JUSTICE OF THE PEACE—NEW TRIAL.

   The last sentence of section 91, chapter 50, of the Code, to wit, "No more than one new trial shall be granted by a justice in any case," construed to mean that not more than one new trial shall be granted either party in any suit.

3. SET-OFF—ASSIGNED CLAIM.

   A defendant is entitled to set-off a *bona fide* claim assigned to him at any time before commencement of suit. The amount paid therefor, if anything, is a matter between the assignor and assignee, with which the plaintiff has nothing to do if he justly owes such claim.

WILLIAMS & SCOTT and CAMPBELL & HOLT for plaintiff in error, cited Code, c. 50, ss. 91, 115; 30 W. Va. 532; Const. Art. III, s. 13; 23 W. Va. 404; Code, c. 131, s. 15.

MCCOLLISTER, BLACKWOOD & OBIERNE for defendant in error, cited Code, c. 50, s. 91; 8 W. Va. 201; 4 W. Va. 180; 13 Gratt. 427; 12 Gratt. 615; Const. Art. VIII, s. 3; 24 W. Va. 622; 33 W. Va. 60; 18 W. Va. 309; 29 W. Va. 508.

DENT, JUDGE:

Hamilton Dickey sued E. Howard Smith before a justice of Cabell county for the sum of ninety nine dollars and twenty five cents. On the day of trial, Smith appeared,

and filed a set-off assigned to him by John Rau, agent, amounting to one hundred and twenty four dollars. There was no dispute as to the validity of either claim, as appears from the evidence; but the sole question involved was whether the assignment was made before or after the suit was begun. The justice decided in favor of the defendant, and gave him judgment for eleven dollars and seventy five cents, the balance due on the account. October 10, 1895, on motion of the plaintiff, the justice opened the judgment, and granted plaintiff a new trial. The plaintiff thereupon demanded a jury, which was granted him; and on the 21st day of October, 1895, the jury found a verdict in his favor for the full amount of his account. Defendant, in turn, moved the justice to set aside the verdict, and grant him a new trial. The justice, under the provision of section 91 of chapter 50 of the Code, that "no more than one new trial shall be granted by a justice in any case," overruled the motion, and entered up judgment on the verdict. The defendant excepted, had the evidence certified, and obtained a writ of *certiorari* to the circuit court. But, on motion of the plaintiff, the circuit court, by its final judgment, entered of record on the 27th day of December, 1895, dismissed the *certiorari*, as improvidently awarded. A writ of error was awarded.

Three questions are presented by the parties and the record for the determination of this Court:

1. Is the amount in controversy sufficient· to give this court jurisdiction? The plaintiff insists that, as the judgment against the defendant is less than one hundred dollars, it must determine the amount in controversy so far as this Court is concerned. *Railroad Co.* v. *Foreman*, 24 W. Va. 662; *McCoy* v. *McCoy*, 33 W. Va. 60 (10 S. E. 19); *Rymer* v. *Hawkins*, 18 W. Va. 309; *Aspinwall* v. *Barrickman*, 29 W. Va. 508 (2 S. E. 795). This would undoubtedly be true if the only matter in controversy was plaintiff's claim, but the defendant filed a set-off or counterclaim amounting to the sum of one hundred and twenty four dollars, which was wholly disallowed him. As to this set-off he is deemed to have brought a suit against the plaintiff. Code, c. 126, s. 9. There being no dispute as to plaintiff's claim, the true

amount in controversy is fixed by defendant's set-off. Nor does it matter what he paid for the set-off, or whether it was a gift to him if the plaintiff owed it, as these are matters between the assignor and the assignee alone, and with which the plaintiff has nothing to do. It is complained that the assignment was merely made to enable the assignor to collect so much of his debt. This is also a matter under the pleadings with which the plaintiff had nothing to do. If he owed the Rau debt, he is under legal obligation to pay it, and it does not matter to him to whom he pays so he gets relieved therefrom.

2. Was the justice inhibited by section 91 of chapter 50 of the Code from granting the defendant a new trial? The section is as follows, to wit: "If the justice believe the verdict to have been procured by fraud or undue means; or to be the result of partiality or prejudice, or to be manifestly contrary to law or the evidence, he may, within twenty four hours after the return of such verdict (Sundays excepted) on motion of the party injured, set aside, and award a new trial in the case, upon the payment of the costs of the former trial, or with costs to abide the event of the action, as he may deem proper. In such case he shall appoint a time for a new trial, and issue a *venire facias* for another jury, if demanded by either party, in accordance with section seventy four of this chapter. But no more than one new trial shall be granted by a justice in any case." The defendant insists that the last sentence of this section applies to jury trials alone, and that, as the one new trial granted was on motion of the plaintiff to the judgment of the justice, he is entitled to a new trial as to the verdict of the jury. The plaintiff, on the other hand, insists that because he obtained a new trial from the judgment of the justice against him, and then applied for and had a jury try the case, which brought in a verdict in his favor, by the inhibition of the statute such verdict is beyond the power of the justice, though it be procured by fraud or undue means, or be the result of partiality or prejudice, or be manifestly contrary to law or the evidence, and is therefore final and conclusive, even on the higher courts, as held in the case of *Manufacturing Co.* v. *Carroll*, 30 W.

Va. 532 (4 S. E. 782). To construe this law thus strictly is to make it bear very harshly on a plaintiff, who, having obtained a just judgment against a defendant, had such judgment set aside by the justice at the instance of the defendant, who desires another opportunity to be heard, and who then procures a change of the trial tribunal, by demanding a jury, and succeeds in some manner, legal or illegal, just or unjust, in obtaining a verdict, contrary to both law and evidence. It is denying to him that equal protection of the laws which is sought to be secured to every citizen by the Constitution of this state by the provision that "the courts of this state shall be open, and every person, for an injury done to him in his person, property, or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." It is simply saying that the defendant, however meritorious the claim against him, if he can succeed in getting the judgment of the plaintiff set aside, and in any manner can procure a verdict of a jury in his favor, has exhausted the power and authority of the justice and all the superior courts to disturb the verdict, and afford the plaintiff an opportunity to show the injustice that has prevailed against him. Such a construction put on the language used by the legislature is entirely too narrow to meet the ends of justice. The provision governing the circuit court found in section 15, chapter 131, Code, is that "not more than two new trials shall be granted to the same party in the same cause." Before a jury was allowed in justice's trials, the law found in section 53, chapter 226, Acts 1872-73, was that, "if judgment be entered a second time against the defendant, it shall not again be set aside"; showing the evident intention of the lawmakers to permit not only one trial, but one new trial to either party before a justice; thus allowing the case, if adverse judgments are obtained, to be tried three times before finality was reached, and then allowing an appeal and a hearing *de novo* with the chances of four jury trials in the appellate court, with the right to appeal, if the amount was sufficient, to the Supreme Court of Appeals. To give plaintiff's construction to the statute under consideration would make a single,

corrupt, erroneous jury trial, without regard to the amount in controversy, less than three hundred dollars, a final, binding, and conclusive determination on all the courts of the state.

The word "case" has various meanings. In a legal sense it means "suit," but in its ordinary usage it means "event," "result," "happening," "side," or "party." The legislature uses it indiscriminately, sometimes having the technical and sometimes the general meaning. In the section under consideration it is used three times —the first time to denote the suit, the second time to denote the event; and the question now is, how is it used the third time? It should be given such meaning as is in accord with the principles of justice, if such meaning does not conflict with the plain intention of the legislature. Giving such construction to this sentence, and it reads: "But no more than one new trial shall be granted by the justice in any case"; that is to either party. In other words, in the case or on the application of either party, not more than one new trial shall be granted by a justice. Such construction gives each of the litigants equal opportunity to be heard once, but after the case has been heard three times or decided twice one way, the powers of the justice are at an end, and if it be by a jury, it becomes a conclusive finality. It is not the case on trial, but the case of the party asking for the new trial, that is intended. And it matters not what that case may present; he can not have but one new trial thereof. When a suit has been decided twice one way, it is to come to an end. It is a fundamental principle of law that "wherever a statute is capable of two constructions, one of which would work manifest injustice, and the other would work no injustice, it is the duty of the court to adopt the latter, as it can scarcely be presumed that an injustice was in the legislative intent." Am. & Eng. Enc. Law, 23, 361. By giving to the words in any case its phraseological, combined with its technical meaning, rather than its technical legal meaning, results in the double purpose of allowing one new trial, not only one to either party in any suit, whether tried by the justice or a jury. On the other hand, by restricting it to its technical

legal meaning, it is rendered possible in the trial of every case before a justice for the existence of two opposite verdicts, and the last one, because it is last, although it may have been procured by fraud or undue means, or be the result of partiality or prejudice, or manifestly contrary to law or the evidence, must be accepted as conclusive. In the circuit court when there are three verdicts one way, the last can not be disturbed. Why, then, before a justice, should there not be two verdicts one way before further litigation should be barred, rather than, when there are two opposite verdicts or judgments, to give the last a binding and conclusive effect? It is true that it is held in the case of *Manufacturing Co.* v. *Carroll,* cited above, "that a second new trial of the cause, as well as an appeal from said judgment, being expressly prohibited by law, no new trial thereof can be had in a court of equity;" and thereby it is assumed as, at least, tacitly admitted that but one new trial could be granted by a justice in a suit before him; but the question under discussion was not directly involved in the decision of that case, but the finality of the justice's forum was simply asserted, for the purpose of denying equitable jurisdiction. Reason, justice, and authority concur in the conclusion reached, that it was the legislative intent that not more than one new trial shall be granted by a justice to either party, whatever the result may be, but that each party shall have the right to one new trial if requested.

3. Was the verdict of the jury contrary to the evidence? The plaintiff's account was not denied, nor was the defendant's set-off to the amount of one hundred and twenty four dollars. The only question, then, was as to whether the assignment was made before suit brought. Section 52 of chapter 50 of the Code provides that "the set-off must have belonged to the defendant at the time plaintiff's suit was commenced." The evidence clearly and fully establishes such to have been the case. There is, however, some evidence which shows that defendant procured the set-off in expectation of the suit, and for the express purpose of defeating plaintiff's action when brought, and also for the purpose of enabling the assignor, Rau, to realize something on his account against the plaintiff. This, however, was not

an unlawful combination against plaintiff. He owed the account. It was for house rent, and he was legally and honorably bound to pay it. Defendant had the right to obtain an assignment of it, and if done before suit commenced, even though it be but the shortest possible space of time, had the right to produce it as a set-off; and he was bound to do so under section 55 of chapter 50 of the Code, or he and his assignor would be forever precluded from the recovery thereof. As the law stood before the adoption of this provision of the Code, a defendant had the right to set off a claim acquired after suit brought, but must pay the costs of the suit. 2 Tuck. Bl. Comm. 106, 107.

Such being the conclusion reached, and the circuit court having erred in dismissing the *certiorari* as improvidently awarded, the judgments are reversed, and the verdict of the jury set aside, and a new trial awarded the defendant; and the case is remanded to the circuit court, to be therein tried, and to be further proceeded in according to law.

HOLT, PRESIDENT, (*concurring*).

Sections 91 and 115, chapter 50, Code, deal with the subject of setting aside verdicts of juries and judgment of justices, and granting new trials, on motion of the party injured; and section 115 refers to section 91 by the phrase "in which it is not otherwise herein provided," as giving the limit to the number of new trials which may be granted; hence the two sections must be construed together, as dealing with the same subject-matter. Section 91 deals with the setting aside of the verdict of the jury. On the motion of the party injured, the justice may set aside the verdict of the jury if he believes it to have been procured by fraud or undue means, or to be the result of partiality or prejudice or to be manifestly contrary to law or the evidence. Section 115 provides that in any case tried without a jury, in which it is not otherwise herein provided, the justice who rendered the judgment may, on the motion of either party set aside the judgment within two weeks after it is entered, and grant a new trial, on such terms and conditions as he sees fit to impose. But this shall only be done when the justice is satisfied that injustice was done by the judgment

to the party by whom the motion is made. But (by latter clause of section 91) no more than one new trial shall be granted ("the party injured") by a justice in any case. Section 15 of chapter 131 deals with the granting of new trials in the circuit court, and provides that not more than two new trials shall be granted to the same party in the same cause; while section 91, as we construe it, provides that no more than one new trial shall be granted by the justice to the party injured in any case. This construction preserves the true legal meaning of the word "case;" makes it apply to section 115, as well as to section 91; brings it into harmony with section 15, of chapter 131, except as to the number of new trials to be granted; and avoids the plain and palpable injustice of granting a new trial to one of the parties injured, and not to the other.

Brannon, Judge (*concurring*).

I concur in the judgment. My reason is that the section in question speaks entirely of a jury trial. The power given by it to give a new trial is applicable alone to a jury trial, another section (Code, c. 50, s. 115) applying to new trials where the justice tries the case without a jury. I repeat that this section alone empowers the justice to grant a new jury trial, is confined to that alone; and having prescribed grounds for it, and means of getting another jury, it at once, without break, and in close connection, says: "But no more than one new trial shall be granted in any case." I mean to impress the point that the very use of the word "but" in that close connection with preceding language shows that the draftsman intended that sentence to apply only to what he had been talking of—a jury trial. The legislature intended to stop litigation and cost at the end of the second jury, no matter how they or either of them ended.