# CHARLESTON.

The Buckeye Saw Manufacturing Company *v.* Rutherford..

Submitted March 25, 1908.    Decided March 30, 1909.

1.  Principal and Agent—*Notice to Agent—Effect.*
    Notice to an agent in the course of his employment, in rela-
    tion to a matter within the scope of his authority, is notice to
    his principal, whether he communicate his knowledge to his
    principal or not.   (p. 398.)

2.  Same—*Sale of Goods—Defects—Notice to Agent.*
    An agent authorized to sell personal property and collect
    the purchase money, under a printed form of contract furnished
    him by his principal which contains a clause warranting, for
    a limited time, the quality of the article sold and binding the
    principal to make the article good, or to supply another in the
    place of it, if notice of its defect be given within the time
    named in the contract, may be notified that the article is not as
    it was warranted to be; and such notice to him is notice to his
    principal.   (pp. 398, 399.)

3.  Bills and Notes—*Transfer—Bona Fide Purchaser—Note to
    Agent—Indorsement to Principal—Defenses.*
    If an agent who is authorized to sell and collect takes from
    the purchaser a negotiable note payable to himself, and before
    it is due, and without consideration endorses it over to his prin-
    cipal, the principal takes it subject to the conditions, made with-
    in the scope of the agent's employment, affecting its execution.
    Such assignment will not defeat the maker's equities.   (p. 399.)

Error to Circuit Court, Webster County.

Action by the Buckeye Saw Manufacturing Company against
A. J. Rutherford.   Judgment for defendant, and plaintiff brings
error.

*Affirmed.*

W. T. Talbott and Hall Bros., for plaintiff in error.

E. H. Morton, J. S. Cogar, and W. C. Woodell, for defend-
ant in error.

Williams, Judge:

On the 20th of October, 1903, A. J. Rutherford bought of
The Buckeye Manufacturing Company, through its traveling
agent, E. E. Simons, and its local agent, A. B. Elbon who resided

at Webster Springs, West Virginia, one 58 inch, inserted tooth, circular saw. This purchase was made upon a printed order blank which contained the following provision: "Saw is to be made of best quality of steel, free from flaws and practically true. Should it prove defective in any particular during time of trial, you are then to put in good shape, or if necessary, replace it with a new saw ................ and it is understood and agreed by us that if no complaint is made within 30 days after receipt of saw, that your warranty on same ceases and we will pay full amount as herein agreed.

It is agreed that the title to saw shall not pass until notes given for same are paid or saw paid for in cash, but shall remain your property until that time, and you not to be held responsible for any verbal arrangement made with your agent, and not incorporated in this order. This order subject to your approval and not to be countermanded."

Pursuant to this order plaintiff shipped the saw and defendant received it on the 13th day of January, 1904. About the last of January, or the first of February, 1904, defendant tested the saw and found it was unsatisfactory; that it would not saw a true line, that it would snake through the log, as sawmill men expressed it. The evidence shows that within thirty days after receiving the saw the defendant notified A. B. Elbon, the local agent, of the defect in the saw.

The saw was returned to plaintiff; after being hammered with a view of bettering its condition, it was reshipped to Rutherford and again tested and found to work no better than it did at first. He again, within thirty days after he had received it the second time, notified the local agent that it wouldn't work.

On the 2nd day of April, 1904, Rutherford executed his negotiable note payable in sixty days at the Webster County Bank to A. B. Elbon & Co. for the sum of $108.50, which sum was equal to the price of the 58 inch saw, including $1.00 for the board on which the saw was shipped. It was agreed at the same time between Rutherford and the agent that the 58 inch saw should be returned and a 62 inch saw furnished in the place of it, and that this note was to be treated as a payment on the price of the new saw, the price of which was $145.00. A new order was made out for the 62 inch saw on the same kind of printed form, blank order, containing the same warranty clause above quoted. This

order was signed by Rutherford and the above note was delivered to the agent.

After making the contract of April 2, 1904, for the 62 inch saw, and executing the above note, Rutherford returned the 58 inch saw. But instead of shipping to him the new saw, plaintiff returned the old one about April 29th, after trying to repair it.

Rutherford says he received it on reshipment, thinking it was the new saw which he had ordered, and did not discover that it was the old one until he had taken it to his mill and unpacked it. He further states that he put it on his mill and tested it again, and found its condition no better; but worse, if any difference, than it was the first time it was tested. He thereupon again notified the agent Elbon, within thirty days of the time he had received it, that it was defective. The defect in the saw is further proved by two other witnesses who were experienced sawyers. Rutherford again shipped it to plaintiff on May 24, 1904, and plaintiff again returned it to Rutherford, and he refused to accept it. The evidence shows that it was in the depot at Webster Springs at the time this action was tried.

The president of plaintiff company testified that he knew of no other order having been received from Rutherford than the one for the 58 inch saw; and that the first notice he had concerning Rutherford's complaint was by letter from E. E. Simons, agent, on April 4, 1904. But this latter part of his testimony was stricken out by the trial court, apparently without objection from plaintiff.

The note above described was endorsed by Elbon, the agent, and turned over to plaintiff who brought suit on it against said A. J. Rutherford and A. B. Elbon, before a justice of the peace. On September 14, 1904, the action was dismissed as to Elbon and tried as to the defendant Rutherford, and resulted in a judgment against him. He thereupon appealed to the circuit court of Webster county. A trial by jury was had in the circuit court, resulting in a verdict and judgment for the defendant, on the 5th day of April, 1906. To this judgment plaintiff obtained a writ of error and *supersedeas* from this Court.

The case turns upon the following points, viz: (1) Whether or not defendant gave notice to the agent of the defect in the saw within thirty days after he had received it; (2) Whether, if notice was given to the agent, it was concerning a matter with-

in the scope of the agent's employment so as to be notice to his principal; (3) Whether or not the agreement of April 2, 1904, that the note should be a credit on the price of the new saw for which defendant on that day gave the agent an order, was binding on the principal; and (4) Whether or not the assignment of the note by Elbon to plaintiff before maturity prevents defendant from setting up failure of consideration.

As to the first point, it is stated by Rutherford that he gave notice to the local agent Elbon within thirty days after he received the saw that it was defective. Elbon says he does not think he received such notice. This does not amount to a positive denial; and besides, it is a fact which the jury must have determined in favor of defendant, and we should not disturb its finding on this point even if the notice had been expressly denied, and we had thought its finding wrong. It was a matter of fact peculiarly within the jury's province.

As to the second point, A. B. Elbon, who was a witness for the plaintiff, says that he was its local agent for the sale of saws, and had authority to collect. He and the traveling salesman, Simons, were both present when the first order was made, and also when the second order was made on April 2nd. Plaintiff does not deny Elbon's agency. The President of plaintiff company, in his deposition taken and read as evidence in the case, does not state whether Elbon was, or was not, such agent. Witness Elbon further says that the only interest he had in the note given by Rutherford was his commission on the sale; that he took this note and turned it over to the plaintiff only as its commission agent. This is certainly sufficient proof to show that he was agent with power to sell and to collect the purchase money. The contract embodied in the order for the saw signed by Rutherford and hereinbefore quoted, shows that the agent made all the sales subject to the approval of the principal, and that the agent was prohibited from making any arrangement with the purchaser not incorporated in the printed form of order. The shipment of the saw by plaintiff shows that it approved the first order; and the order on its face binds the plaintiff upon a warranty that the "saw is to be made of best quality steel, free from flaws and practically true." This warranty, however, is limited in time to thirty days after the saw is received by the

purchaser; and unless within this time complaint was made of its quality, the warranty was to cease. But, on the other hand, if complaint was made within said thirty days, the plaintiff was to make good its warranty by putting the saw in good shape, or by furnishing another in its place. Anything, therefore, that the agent could do to assist the principal in carrying out its contract of warranty, would be for the purpose of enabling him to collect the purchase money for the saw, and would certainly be within the scope of his authority. He was agent to sell, under a contract of warranty of the quality for the limited time above described. He could not collect if there was a breach of the warranty and notice within the time. It was, therefore, both in the scope of his employment and in the line of his duty to receive such notice and communicate it to his principal. We therefore conclude that notice to Elbon was notice to the plaintiff company. 1 A. & E. E. L. 1144 to 1149; *Newlin* v. *Beard*, 6 W. Va. 110; *Peterson* v. *Wood Mowing & Reaping Co.*, 97 Iowa 148; *Bank* v. *Nelson*, 38 Ga. 391; *Cole* v. *Jefferson Ins. Co.*, 41 W. Va. 261; *Littaner* v. *Houck*, 92 Mich. 162; *McClelland* v. *Saul*, 113 Iowa 208; *Ross et al* v. *Houston*, 25 Miss. 591; Clark & Skyles on Agency, 1044; *Henry* v. *Sneed*, 99 Mo. 407; *Merrill* v. *Packer*, 80 Iowa 542; *Reed's Appeal*, 34 Pa. St. 207.

In regard to the third point, this is largely answered by the discussion of the second point above. The agreement of April 2, 1904, was made in pursuance of plaintiff's warranty on the sale of the first saw, by which it bound itself to either make the first saw good or to supply another in its place; and the note of April 2, 1904, was given with the express understanding that it was to be applied as a credit on the price of the new 62 inch saw, the price of which was $145.00. If it was not to be so applied there was no consideration for it. That it was given for the exact amount of the price of the first saw is only a fact tending to prove that it was given as a payment for the first saw; and this fact the jury must have determined was rebutted and entirely overcome by the direct testimony of both Rutherford and the agent Elbon. In addition to this testimony there is a memorandum endorsed on the order for the second saw, that is made on the same kind of order blank as the first, which is as follows: "A. B. Elbon & Co. hold A. J. Rutherford note for

$108.50 for (1) 58 inserted tooth saw, which the above mentioned note is to be credited on the within orders as per guarantee." Whether or not this agreement is binding on plaintiff is immaterial; because plaintiff would either be bound to accept this contract, or otherwise make its warranty good, before it could enforce collection of the note. It could not claim the benefit of the note and at the same time refuse to comply with the contract, or to fill the order for which the note was given. If it chose to accept the benefits of this contract made by its agent it must also bear its burdens. *Dewing* v. *Hutton*, 48 W. Va. 576.

As to the fourth point, the note is negotiable and was made payable to the agent Elbon who assigned it to his principal before maturity. There was no consideration for this assignment, and plaintiff is not a purchaser of the note for value. Elbon says in his testimony that he simply held it as a matter of accommodation for the plaintiff, and that he had no interest in it except as commission agent. Plaintiff, therefore, is in no better position in respect to the note than if it had been the payee. The agent in such case is simply an accommodation indorser for his principal who holds the note subject to the equities in favor of the maker.

A number of instructions were given on behalf of the defendant and a number asked for by plaintiff refused, and objections made which are saved by bills of exceptions. But inasmuch as the judgment appears to be plainly right upon consideration of the whole record, we do not deem it necessary to discuss the questions raised by the instructions. They appear, however, to define the law of the case as it is expressed in this opinion. *Good* v. *Love's Admr.*, 4 Leigh 635; *Bank* v. *Napier*, 41 W. Va. 481; *Davis* v. *Living*, 50 W. Va. 431; *Davis* v. *Webb*, 46 W. Va. 6; *Corder* v. *Talbott*, 14 W. Va. 284; Oxley's Instructions to Juries, page 35.

We find no error affecting the judgment of the lower court and affirm it.

*Affirmed.*