# CHARLESTON.

## BLACK & SONS *v.* JOHNSON & SON.

Submitted February 2, 1909.   Decided April 20, 1909.

1. SALES—*Executory Sale.*
    Whether a sale of personal property is complete or only executory is to be determined from the intent of the parties, as gathered from the contract, the situation of the thing sold and the circumstances surrounding the sale. .(p. 520.)

2. PRINCIPAL AND AGENT—*Notice to Agent—Scope of Agency.*
    A principal is affected by notice to his agent respecting any matter distinctly within the scope of his agency when the notice is given before the transaction begins, or before it is so far completed as to render the notice nugatory. (p. 521.)

3. SAME.
    The agent of a railroad company to inspect and take up railroad cross ties and to whom the vendor thereof has also entrusted the duty of measuring, inspecting and taking up for and reporting said ties to him is so far the agent also of such vendor as to make notice to him obtained while engaged in measuring, inspecting and taking up such cross ties of the rights and claims of the true owner thereof, notice also to such vendor. (p. 522.)

Error to Circuit Court, Lincoln County.

Action by W. F. Black & Sons against B. Johnson & Son. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

WILLIAMS, SCOTT & LOVETT, for plaintiffs in error.

C. E. BURNS and D. E. WILKINSON, for defendants in error.

MILLER, PRESIDENT:

This is a civil action begun by plaintiffs against defendants, before a justice of Lincoln county, to recover the price of a lot of railroad cross-ties. The judgment of the justice was for defendants, but upon appeal to the circuit court the plaintiffs obtained a verdict and judgment there against defendants for $235.59, and the defendants have brought the case here upon a writ of error.

It is conceded that the ties were gotten out and delivered by plaintiffs at Six Mile, a way station on the Guyandotte. Valley

Railroad, pursuant to anj order given by defendants to I. J. Swann and by the latter turned over to plaintiffs in August, 1904; that in February, 1905, some three or four months after the ties had been delivered at the railroad, and plaintiffs had notified them of Swan's failure to take up and pay for the ties, and after considerable correspondence with them defendants sent J. W. Jorden, an inspector for the Pennsylvania Railroad Company, to inspect, measure and take up the ties. Along with Jorden came T. J. Bowlen, representing J. W. Johnson & Co., to inspect, measure and take up some other ties purchased by the latter firm from plaintiffs; that after these ties had been partially inspected and loaded, W. F. Black, a member of the plaintiff's firm appeared, and, Swan having failed in business, without having taken up and paid for the ties, he notified Bowlen and Jorden of this fact, that the ties belonged to his firm and that he would not allow them to be billed out unless either J. W. Johnson & Co., or the defendants would agree to pay for them. So much is conceded, but what agreement was made before the ties were finally billed out the following day, if any, is controverted. Black, corroborated by his witnesses, says, that Bowlen and Jorden promised they would write J. W. Johnson & Co., and if either this firm or defendants would pay for the ties, they would bill them out the following day, and that upon this promise he permitted the ties to go. Bowlen and Jordon deny making any such promise, and defendants deny the agency of either to make such promise; in fact they deny that either Jorden or Bowlen were their agents for any purpose. They admit, however, that they sent Jorden to measure, inspect and take up and bill out the ties to the railroad company for their account, and to report to them, and that they had sent no other representative for that purpose. Black claims not to have known at the time exactly whom Bowlen and Jorden represented, but says he supposed Jorden represented defendants. Defendants place much stress on the fact that the day after the ties were shipped Black wrote J. W. Johnson & Co. demanding pay from them; and that afterwards, on the suggestion of this firm, that Swann was the man to pay, Black wrote him requesting him, if he was to pay for the ties, to send him a check for the amounts. Defendants also rely on the fact that plaintiffs never replied to their letter of October 18, 1904, saying "We * * * * * presume

you are getting these ties out for Mr. Swann;" and that in their letter to defendants, December 7, 1904, they refer to the ties as the "Switch ties I sold to I. J. Swann;" and that in their letter to defendants of October 25, 1905, plaintiffs substantially admit that they allowed the ties to be billed out and shipped without any agreement that defendants were to pay for them.

We do not see anything, however, in these admissions or transactions of plaintiffs materially inconsistent with their present claims. Swann as a witness for defendants admits, in corroboration of the testimony of plaintiffs, that he never measured, inspected, received, accepted or paid the plaintiffs for the ties, or authorized or directed any one to do so for him; that after being notified by plaintiffs of Swann's failure to take up the ties defendants sent Jorden to take them up and bill them out to the railroad; and that before completing the work of measuring, inspecting and billing them out Jorden was given notice that the ties were the property of plaintiffs, had never been delivered to Swann or paid for by him, and that they would not take Swann or look to him for their pay; that defendants have never paid or settled with Swann for the ties in any other way except to credit him on an old prior account, existing when the order for the ties was given Swann and by him turned over to plaintiffs. We must regard the controverted facts depending on the conflicting oral evidence as settled by the verdict of the jury in favor of plaintiffs.

Three questions are presented: First, had the title to the ties passed to Swann at the time they were inspected and taken up by defendants? Second, if the title had not passed to Swann, are plaintiffs estopped by their acts, conduct or admissions as against defendants from controverting this fact? And, third, was Jorden so far the agent of defendants in taking up the ties as to make notice to him of plaintiffs claims and rights notice to his principals? The answer to these questions will dispose of all the material points of error presented by the record.

Whether a sale of personal property is complete or only executory is to be determined from the intent of the parties as gathered from the contract, the situation of the thing sold and the circumstances surrounding the sale. *Morgan* v. *King,* 28 W. Va. 1, 14; *Hood* v. *Bloch,* 29 W. Va. 244; *Osborne* v. *Francis,*

38 W. Va. 312; *Bank* v. *Napier*, 41 W. Va. 481.   Although we must say from the evidence in this case that the ties involved had been delivered at the place where they were to be measured, inspected and taken up either by Swann, or by the defendants on whose order they had been gotten out, yet Swann, though notified, as he admits, had never appeared to measure, inspect, receive or take up the ties, and so as to ascertain the amount to be paid plaintiffs, and had not in fact received or accepted them.   And the plaintiffs evidence is that they had never parted with either the title or possession thereof at the time the ties were loaded and billed out by defendants.   While these claims of plaintiffs and admissions by Swann might not be binding on an innocent purchaser without notice, we think, under the circumstances of the case they are conclusive as between plaintiffs and Swann.   Nor do we think there was anything in the location of the ties or the situation or circumstances of the parties to warrant defendants in assuming that the ties belonged to Swann.   Plaintiffs had notified them of Swann's failure to take up the ties, and this notice seems to have been sufficient to put them on inquiry, for in a letter to Swann of October 14, 1904, and his reply thereto of October 16, 1904, properly rejected by the court below as against plaintiffs, they claim that in giving the order they had figured the amount of Swann's indebtedness to them, refer to plaintiffs letter of notification, and say to him, if it was not his intention to pay plaintiffs and turn the ties over to them, in settlement of his account, they did not expect to take the ties.   But plaintiffs had no notice of this correspondence, and defendants had actual notice from Swann's letter that although he expressed his intention to do so he had not in fact paid for the ties up to that time; and when defendants sent Jorden to take up and bill out the ties, if the notice to him was notice to them they were given notice at the time that Swann had not taken up and paid for the ties, that the ties were not his, and that they should be billed out only on condition that defendants or J. W. Johnson & Co. would pay for them.   Notwithstanding this notice defendants took plaintiffs ties, sold them as purchased from Swann, and credited the proceeds on Swann's old indebtedness to them.   Nothing that plaintiffs said or did before hand therefore caused loss or damage to defendants, and we do not think anything done or written by

plaintiffs conclude them from now asserting their legal rights against defendants.

Was notice to Jorden notice to defendants of plaintiff's rights? If he was their agent to inspect, measure, receive, take up and report to them the ties billed out to the railroad company, as defendants admit, although he was also the agent for the railroad company about the same matter, we think that notice to him of plaintiff's claims was notice to them, and that it was his duty to have reported to them the facts. The defendants had no other agent present for that purpose. They relied on Jorden, and if they had not had the notice directly from plaintiffs, notice to Jorden was sufficient to bind them. The law on this question as laid down in 1 Parsons on Contracts, and approved and followed by this Court in *Hart* v. *Sandy,* 39 W. Va. 646, 655, is that "a principal is affected by notice to his agent respecting any matter distinctly within the scope of his agency when the notice is given, before the transaction begins, or before it is so far completed as to render the notice nugatory." And this writer says in the same connection: "Knowledge obtained by the agent in the course of that very transaction is notice; and it has been said, that knowledge obtained in another transaction, but so short a time previous that the agent must be presumed to recollect it, is also notice affecting the principal." In the foot note, at page 79, it is said in the same book: "The reason generally for charging the principal with notice is that it is the duty of the agent to communicate to his principal the knowledge he has of the subject matter of the agency." *Lewis* v. *Arnold,* 13 Grat. 454, relied on by defendants, we do not think in conflict with this doctrine. The only question decided in that case, and sought to be applied here was, that A's boatman sent to get the salt delivered to him by N, and after it was delivered on the boat, was not competent as A's agent to abandon the salt and relinquish his legal rights, a point inapplicable here, for no such question is presented. If the question in that case had been whether notice then given the boatman of the claims of L to the salt in question was notice to A, the exact point we have here would have been presented. In the case of *Hart* v. *Sandy, supra,* this Court quotes from Story on Agency, section 140, as follows: "Notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from or is at the time

connected with the subject matter of his agency; for, upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal, and, if he does not, still, the principal having intrusted the agent with the particular business, the other party has the right to deem his acts and knowledge obligatory upon the principal; otherwise the neglect of the agent might operate most injuriously to the rights and interests of such party."·

We perceive no errors in the judgment or ruling of the court below of a nature prejudicial to the defendants, and the judgment below is therefore affirmed.

*Affirmed.*