## CHARLESTON.

F. C. GEORGE *v.* HERBERT STANSBURY *et al.*.

Submitted March 21, 1922.    Decided March 28, 1922.

1. PRINCIPAL AND AGENT—VENDOR AND PURCHASER—*Notice That Land Has .Been Sold, Given Purchaser's Agent While Negotiating Sale, is Notice to Purchaser; Deed With Notice Will Not Take Priority Over Unrecorded Deed.*

   Where a subsequent purchaser for value obtains a deed for land through an agent and the agent, while negotiating therefor is informed that the land has already been sold and conveyed to another, such notice to the agent is notice to his principal, and though the subsequent purchaser's deed be first recorded it will not take priority over the deed first made, and it may be cancelled and set aside by a court of equity in a proper proceeding for that purpose. (p. 599).

2. VENDOR AND PURCHASER—*Purchaser's Knowledge That Occupant Controls City Lot Held to Have Put Him on Inquiry As to Occupant's Title.*

   Knowledge that a party has a city lot under his control, coupled with the fact that he cultivated a garden on it in one year and the next year had from 300 to 500 loads of dirt placed on it, from excavation on a lot nearby, is sufficient notice to a purchaser of such city lot to put him on inquiry as to the occupant's title, and if he takes a conveyance from a former owner thereof, he will be charged in favor of such occupant with all information such inquiry would have given him. (p. 599).

Appeal from Circuit Court, Raleigh County.

Suit by F. C. George against Herbert Stansbury and others.    Decree in favor of plaintiff, and defendant Herbert Stansbury appeals.

*Affirmed.*

W. H. *File,* and *Price, Smith, Spilman & Clay,* for appellant.

A. P. *Farley* and *Hugh A. Dunn,* for appellee.

MEREDITH, JUDGE:

In October, 1918, E. D. George departed this life, leaving a will by which he devised considerable property, consisting

of personal estate and certain lots located in Beckley, Raleigh County.    Lot No. 38, known as the ''Blacksmith Shop Lot,'' was given to his two grand-children, Lawrence K. Spencer and Willie Spencer Foster.    They lived in Ohio.    The half devised to Lawrence is the matter in controversy in this suit.    Fred C. George, a son of the testator, qualified as administrator with the will annexed, and as such has    been administering the personal estate, but under the terms of the will no control over the testator's real estate was given his personal representative.

In the spring of 1919 the plaintiff, through some arrangements with Lawrence K. Spencer and Willie Spencer Foster, was permitted to cultivate their lot and he planted a garden on it.    There were no buildings on it, the blacksmith shop having decayed or been carried away, but the lot was under fence.

On July 21, 1919, Lawrence K. Spencer and Willie Spencer Foster executed a deed for the lot to plaintiff for $3500; of the purchase money $1000 was paid in cash to each of them, and plaintiff also gave each a note for $750 payable at six months.    Plaintiff neglected to record his deed.    He did not cultivate the garden the next year, for the reason, as he says, that he was planning to construct a building on it.    He did permit an owner of a nearby lot, who was excavating for the foundation for a building to haul from 300 to 500 loads of the dirt from the excavation and place it on his lot so as to fill a low place.    In the building operations on the adjoining lot the fence on that side was broken down.

About August 9, 1920, Lawrence K. Spencer mailed to E. C. Scott, an attorney at Beckley, the note executed by plaintiff for the balance of the purchase money on the Spencer half of the lot, and instructed him to collect it.    It appears that Scott was informed either then or shortly thereafter that the plaintiff had paid Spencer $1000 on his half of the property and that this note represented the deferred payment, but it is not clear whether Scott knew Spencer had executed a deed to the plaintiff or whether plaintiff held his rights under a contract, Scott claiming that he thought then that no deed had been made but that Spencer had merely

executed a contract of sale.    Scott made repeated requests of the plaintiff for payment of the note and plaintiff made promises to pay when he got a deal closed for another parcel of land the sale of which he was negotiating.    Scott examined the records and found plaintiff had no deed recorded and got a description of the lot by number and dimensions.

He was a member of the State Legislature and it was called in extra session in September, 1920; just a few minutes before leaving for Charleston to attend this session, he advised the defendant, Stansbury, that he represented Lawrence Spencer and would sell him Spencer's half interest in the lot for $1,750; that he was going from Charleston to Columbus, Ohio, where Spencer lived, and Stansbury told Scott "if it was a trade to draw on" him for that amount at the Bank of Raleigh.    Scott came to Charleston in time to attend the session which began September 14th and adjourned on the 17th.    He went from Charleston to Columbus as planned, and saw Mr. and Mrs. Spencer and told them about the proposed deal.    Spencer claimed that the plaintiff had only a contract of purchase, but Mrs. Spencer asserted that they had executed to him a deed for the one-half interest in the lot.    It finally ended by their acquiescing in Scott's plan, whereby they would get the $750 immediately, and the $1000 which the plaintiff had paid Spencer was to be refunded out of the money Stansbury was to pay.    At the Deshler Hotel Scott dictated a deed, dated it September 11, 1920, and the Spencers signed and acknowledged it, conveying to the defendant, Stansbury, the half interest in the lot.    The deed was acknowledged September 20th, Scott gave Spencer his check for $750, the purchase money coming to him, and mailed the deed to Stansbury, which was recorded September 23rd.    He did not draw on Stansbury as he had been told to do but came home and on September 24th saw Stansbury, who paid him the $1750.    He then kept $750 to reimburse himself for the money advanced Spencer.    The plaintiff had gone to Roanoke, Virginia, and Scott, not finding him on his return, placed $1000 to his credit in the Bank of Raleigh, with the $750 note plaintiff had given Spencer for his original de-

ferred payment.    The Bank notified plaintiff by postcard of
the deposit, stating it was made by Lawrence K. Spencer,
though Spencer was not in Beckley and did not in fact
make it.    It doubtless did this at Scott's direction.

On the next Monday, the 27th, the plaintiff, being in-
formed of the situation, mailed his check to Spencer for
$1000, which it appears Spencer never used.    Plaintiff re-
fused to take the $750 note from the Bank, but went on
checking on his account, he having previously had an account
at that bank.    On September 27th he recorded his deed
and on September 29th brought this suit to cancel defendant
Stansbury's deed as a cloud on his title.    It is unnecessary
to discuss the bill and amended bill and answers thereto.
The court on final hearing decreed that plaintiff was entitled
to have Stansbury's deed cancelled; that before doing so
he should pay to Stansbury the sum of $1750 with interest
from September 22, 1920, and which sum was tendered him
by plaintiff.    He refused to accept it and the amount,
$1815.62, was paid to the general receiver of the court. The
court further decreed that plaintiff pay the costs of suit. The
court found that Scott was the agent of Stansbury in the
purchase of Spencer's half interest in the lot, but found
there was no collusion between Scott and Stansbury and
that Stansbury had no knowledge of Spencer's deed to plain-
tiff at the time of his purchase, but that Scott had such
knowledge and that notice thereof to Scott was notice to
Stansbury.

We deem it unnecessary to discuss defendant's claim that
the plaintiff has not shown such actual possession of the
land as entitles him to maintain the suit to remove a cloud
from his title or that he is estopped by his conduct in check-
ing out the $1000 placed to his credit in the bank, as the real
question in the case is whether Stansbury had notice of plain-
tiff's claim to the half interest of Spencer at the time he
acquired his deed and paid the purchase money.

Was Scott agent for the defendant in making the pur-
chase?    We think he was.    It is stated in the brief of de-
fendant's counsel that "before Scott went to Columbus
Spencer had told him to sell the lot," but this could have

meant no more than that as his attorney he should institute suit and sell it in a judicial proceeding and thus enforce payment of the note sent him for collection. He was employed by Spencer to collect the note, not to sell the property at private sale, because Spencer knew he did not own it. All Spencer was interested in was obtaining his money. It was on Scott's initiative that he found a purchaser at private sale.

From the moment negotiations with Stansbury began to the final delivery of the deed, who looked after Stansbury's interests? Agent Scott. He negotiated the deal with the Spencers, persuaded them to make the deed, though they and he knew they had no title to the premises. He dictated the deed and paid them the $750 out of his own money, expecting to be and was reimbursed by Stansbury. Stansbury permitted Scott to pass on the sufficiency of the deed, its form, contents and whether it was properly executed. Another significant fact is that so far as the record shows, Spencer did not pay Scott anything for his services, not even his expenses on the trip to Columbus. Scott paid Spencer the $750 owing him from the plaintiff. The note does not appear to have borne interest until after maturity, as appears from the deed, though the note itself is not in the record. At any rate no interest was collected. Scott was certainly not acting gratuitously. If he was not paid by Spencer, and the record indicates he was not, who paid him? Who paid his expenses to Columbus, and while there, and his fare from Columbus to his home? Who paid him for preparing the deed and for passing on its sufficiency? Did he go to all this expense and trouble, using time, money and energy for naught? It may be so; but in the absence of anything showing why, we can hardly believe he did. We think it sufficiently appears that Spencer did not pay him. Whether Stansbury paid him the record does not disclose. It simply shows that Scott did not take any interest in the lot as a silent partner, but it does not negative the strong implication that Stansbury may have paid him for his services, or if he has not paid him, that he is to pay him at the end of this litigation. Notwithstanding the denial of both Scott

and Stansbury that Scott was Stansbury's agent, we think their conduct clearly shows he was, and the circuit court did not err in so finding.

But counsel for Stansbury strenuously insist that even if Scott were Stansbury's agent, notice to him of plaintiff's unrecorded deed was not notice to Stansbury, on the ground that Scott acted adversely to his principal's interests in concealing from him the fact that Spencer had already conveyed his property to the plaintiff, and cite us to *Bank* v. *Black,* 108 Va. 59, 60 S. E. 743; *Baker* v. *Berry Hill Mineral Springs Co.,* 112 Va. 280, 71 S. E. 626; and *Culpepper National Bank* v. *Tidewater Improvement Co.,* 119 Va. 73, 89 S. E. 118. We do not think these authorities are applicable to the facts in this case. While Scott took a wrong course to acquire the property for his principal, yet we can not say he acted adversely to his principal's interests. He says the reason he did not tell him of the prior sale was because he wanted to make Stansbury an innocent purchaser, and thus enable him to acquire a good title. We believe he acted in good faith toward Stansbury; considering the course pursued, he has certainly shown he was loyal to his principal. Nor can we say from the record that he had any personal ends to gain by concealment. The only possible way Scott could have gained any personal advantage by the transaction was by his becoming a silent partner of Stansbury's in the purchase or by being compensated by him; both swear he was not a silent partner, but say nothing about his compensation for his services. Assuming Stansbury paid him or is to pay him, this alone, under the circumstances shown, would not be sufficient to show that Scott acted adversely to Stansbury's interests, so as to relieve Stansbury from the rule that notice to the agent is notice to the principal. And after full information of the prior conveyance, though this had been concealed from him at the time he paid his money and acquired his deed, he refused to accept the amount paid by him and to cancel his deed. He elected to keep the benefits of his agent's act and thereby ratified what he had done after full knowledge.

But counsel for defendant cite us to *McCormick* v. *Wheeler,*

*Mellick & Co.,* 36 Ill. 114, 85 Am. Dec. 388, which holds that "A party is not chargeable with notice of facts within the knowledge of his attorney," where the latter acquired knowledge thereof while acting as the attorney of another party." If this be a correct statement of the law, yet it does not apply here. Stansbury testifies that when Scott told him how much Spencer's half interest would cost, he told Scott to make the deal and draw on him for the amount, and Scott, while acting for Stansbury in negotiating with Spencer for the deed, learned about Spencer's conveyance to the plaintiff. He got this notice while acting for Stansbury, and this under the law was constructive notice to his principal. In giving the several instances of constructive notice, 2 Minor on Real Property, sec. 1413, says:

"Where the counsel, attorney or agent of the subsequent purchaser, whether for the whole or a part of the transaction, or one closely followed by or connected with it, has notice of the prior incumbrance or claim, whilst concerned for his principal. In such case the notice of the agent is notice to the principal."

To the same effect, see 2 Minor's Inst., page 980; 3 Sugden on Vendors 318; *Merchant's Bank* v. *Ballou,* 98 Va. 112, 32 S. E. 481, 81 A. S. R. 715, 44 L. R. A. 306.

But notice to Stansbury on the record before us could be imputed wholly aside from any agency of Scott. The lot was in the possession of the plaintiff. Stansbury says the plaintiff had charge of it, but he thought he was merely representing the owners, Spencer and Mrs. Foster. Plaintiff had farmed it the year before and during the year of Stansbury's purchase he had permitted from 300 to 500 loads of material to be placed on it. This, in view of Stansbury's information of plaintiff's control of the lot, was sufficient to put him on inquiry. Why did he not inquire of the plaintiff about the title? He lived in the same city and saw him frequently. It was his duty under the circumstances to inquire. He could not close his eyes to obvious facts and say he did not know. He had the means of knowledge and there before him was the fact, admitted by him, that plaintiff had control of the premises, cultivated the

lot, and made a very considerable fill on it. . "Actual possession of land is notice to purchasers of the occupant's right to the land, though. his title paper is not recorded, whether the subsequent purchaser actually knows of such occupant's right or not." *Weekly* v. *Hardesty,* 48 W. Va. 39, 35 S. E. 880. "Possession of land is sufficient notice to a purchaser, contracting with a claimant thereof not in possession, to put him on inquiry; and if he takes a conveyance from such claimant he will. be charged in favor of the person so in possession with all information such inquiry would have given him if diligently pursued." *Smith* v. *Owens,* 63 W. Va. 60, 59 S. E. 762.

Upon a careful consideration of the record, we find no error, and therefore affirm the decree.

*Affirmed.*