313 S.E.2d 405

John E. VANMETER, et al.

v.

**W. VA. DEPT. OF MOTOR VEHICLES, et al.**

No. 16105.

Supreme Court of Appeals of West Virginia.

Jan. 27, 1984.

Dissenting Opinion March 5, 1984.

Staggers, Staggers & Webb and David Webb, Keyser, for petitioners.

Chauncey H. Browning, Atty. Gen. and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for respondents.

NEELY, Justice.

This is an original mandamus proceeding. Petitioners seek to compel the respondent, the West Virginia Department of Motor Vehicles (DMV), to return to them fees of twenty-five dollars ($25) which petitioners believe were improperly charged by respondent for the return of registration plates. Because we believe that respondent acted properly and within the statutory guidelines, we deny petitioners' writ.

The West Virginia Legislature has adopted a law that requires every owner or registrant of a motor vehicle licensed in this state to maintain security against legal liability during the registration period for each vehicle. *W.Va.Code* 17D–2A–1 [1981]. The petitioners had complied with that legal requirement for some time. However, because the rates imposed by their insurance carrier had risen substantially, they sought and obtained insurance with new companies. When their former insurers informed the DMV that petitioners were no longer insured, as they were required to do by *W.Va.Code* 17D–2A–5(a) [1982], the DMV sent notices of pending suspension to petitioners by certified mail as required by *W.Va.Code* 17D–2A–5(b) [1982].

The letters told petitioners that they were required to submit a new certificate of insurance within twenty days or the registrations of their vehicles would be suspended and they would be required to pay a ten dollar ($10) reinstatement fee. The notice went on to inform petitioners of their right to an administrative hearing and stated that on receipt of a written request for such a hearing within ten days of the receipt of the Order of Suspension, they would not have to return their West Virgi-

nia license plates unless the results of that hearing were unfavorable to them. Finally, the notice informed petitioners that if they failed to request a hearing or submit a certificate of insurance, the license plates would have to be returned before the date of suspension. Failure to comply with this aspect of the notice would lead to an order being filed with the state police to secure the license plates from petitioners and would also result in an additional fifteen dollar ($15) punitive fine. This final section was in accordance with *W. Va. Code* 17A–9–7 [1981].

Although petitioners had obtained new insurance on their vehicles, they failed to comply with the notice by either sending respondent a new certificate of insurance or requesting the hearing at which they could prove the continuation of their coverage with another insurer. Furthermore, they did not return their license plates as required. Accordingly, they were assessed the statutory fee and fine.

Petitioners argue that the purpose of the relevant statute was to remove uninsured motorists from the highways and not to place obstacles in the way of individuals who seek to change insurance carriers. We agree. Nevertheless, the means chosen by the legislature to advance this goal requires individuals to furnish the DMV with evidence of their continued coverage if they choose to change insurers. After all, there must be some policing mechanism to make sure that the legislative goal of universal automobile insurance becomes a reality. The means chosen does not seem unduly burdensome. Individuals who change insurers have options about how to inform the DMV of their continued coverage and adequate time in which to do so. If petitioners find this system unsatisfactory, their complaint should be taken up with the legislature. This is not a proper case for the issuance of a mandamus order.

We do not wish to appear overly callous in this case; certainly we recognize that government paperwork requirements are burdensome for everyone, but particularly for those who have little business or legal experience. In this case, however, the equities lie with the DMV. Petitioners were sent a clear letter written in plain English which outlined their available options.[1] The letter was sent by certified mail to assure that petitioners received it. It was signed by an individual and contained a phone number which petitioners could have called if they had any questions. Petitioners had insurance agents who were famil-

---

1. The following letter from the DMV, which one petitioner actually received, shows the form of the correspondence:

   You are hereby officially notified that the Department of Motor Vehicles has received from Progressive Casualty Ins. Co. a notice of cancellation or termination of the insurance policy for the vehicle(s) listed herein.
   The Department must receive certain required information from you before the suspension date listed herein or the registration of the vehicle(s) will be suspended and you will be required to pay a $10.00 reinstatement fee to this department.
   If you still own the vehicle(s) described herein, you must submit a new certificate of insurance. If you have sold, traded, or otherwise disposed of this vehicle, you may submit a written statement under penalties of perjury on the back of this notice. Information submitted will be verified before accepted. If information cannot be verified, suspension will be in effect on the date listed.
   License plate number(s) DU1068
   Year and make of vehicle(s) 72 Merc
   Upon your written request the Commissioner of Motor Vehicles will allow you an opportunity to an administrative hearing. Such written request must be filed with the Commissioner in person or by certified mail, within ten (10) days after receipt of this order of suspension. The scope of the hearing will be whether or not you had insurance in effect on the vehicle(s) described in this order. The purpose of the hearing is not to determine why you do not have liability insurance.
   If you request a hearing within ten (10) days after receipt of this notice, you do not have to return your West Virginia license plate(s) to this office until the termination of any hearing which results in an unfavorable decision to you. If you do not request a hearing or submit the information requested above after receipt of this notice, the license plate(s) listed herein must be returned to this office before the suspension date.

   W VA (84) 35

   If you fail to comply with the above notice of suspension before the suspension date, an order will be delivered to the state police to secure your license plate(s). You will then be required to pay an additional $15.00 penalty fee.

iar with this process and whom they could have contacted for assistance. In fact those agents did act on their behalf, albeit in an untimely manner.

The petitioners' decision to ignore the DMV's clear directive imposed real costs on the DMV. After all, the government must have some cost-efficient means of assuring that citizens are carrying automobile insurance. If the DMV tracked down each individual's insurer on its own, the cost to the public would be substantial. Although it may seem draconian to send out police officers to remove plates, in reality the fact that police were required to perform this function because petitioners ignored their legal responsibilities does not redound in favor of petitioners. It was their irresponsibility which required the police to expend valuable time on this matter.

It is settled law in West Virginia that a "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel: and (3) the absence of another adequate remedy." Syl. Pt. 2, *McGrady v. Callaghan,* 161 W.Va. 180, 244 S.E.2d 793. Neither the first nor second element of this test exists in the present case. Petitioners have no clear legal right because their injury flows solely from their own failure to respond to adequate and clear notice of their legal responsibilities. Respondent has no legal duty to refund the fines because she acted in full compliance with her statutory responsibilities.

Accordingly, for the reasons given above, we decline to award the writ.

McGRAW, Justice, dissenting:

In 1981, the West Virginia Legislature enacted West Virginia Code §§ 17D–2A–1 to –9 (1983 Supp.), the Security Upon Motor Vehicles Act, 1981 W.Va.Acts ch. 157. Its stated purpose is "to promote the public welfare by requiring every owner or registrant of a motor vehicle licensed in this State to maintain certain security during the registration period for such vehicle."

As this Court stated in *Dickey v. Smith,* 42 W.Va. 805, 809, 26 S.E. 373, 375 (1896):

It is a fundamental principal of law that "whenever a statute is capable of two constructions, one of which would work manifest injustice, and the other would work no injustice, it is the duty of the court to adopt the latter, as it can scarcely be presumed that an injustice was in the legislative intent." Am. & Eng.Enc. Law, 23, 361.

*See also Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625, 642 (1983); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268, 277 (1983); *Richardson v. State Compensation Commissioner,* 137 W.Va. 819, 824, 74 S.E.2d 258, 261 (1953); *State ex rel. McLaughlin v. Morris,* 128 W.Va. 456, 461, 37 S.E.2d 85, 88 (1946); Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1939); Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925); Syl. pt. 2, *Parsons v. Roane County Court,* 92 W.Va. 490, 115 S.E. 473 (1922); Syl. pt. 1, *Rider v. Braxton County Court,* 74 W.Va. 712, 82 S.E. 1083 (1914); Syl. pt. 2, *Hasson v. City of Chester,* 67 W.Va. 278, 67 S.E. 731 (1910).

Similarly, in Syllabus Point 2 of *State v. Baltimore & Ohio Railroad Company,* 61 W.Va. 367, 56 S.E. 518 (1907), this Court stated:

A statute is to be interpreted in the light of the nature of its subject matter, the purpose of the legislature in passing it, and the conditions and circumstances under which the law making body must have known it would operate; and, upon these conditions, it will not be so interpreted as to make it impose unreasonable burdens, greatly disproportionate to the resultant public benefit, unless its terms are so explicit and positive as to preclude any other construction.

*See also* Syl. pt. 5, *Pond Creek Pocahontas Co. v. Alexander,* 137 W.Va. 864, 74 S.E.2d 590 (1953).

The majority ignores both of these well settled rules of statutory construction, as well as the avowed intent of the Legislature, in holding that motorists who have their plates seized despite having insurance

may not recover fees charged for the return of those plates.

The purpose of the statute in question is clear, it is to keep uninsured motorists off our State's streets and highways. It is absurd to punish motorists who comply with this basic purpose simply because they erroneously believed that maintaining insurance on their motor vehicles prevented confiscation of their plates by the Department of Motor Vehicles. True, they failed to respond to notices received in the mail. This failure may have been attributable, however, to illiteracy; illness; lack of sophistication; uncertainty as to the effect of their failure to reply; or reliance upon the fact that they indeed continued to have insurance on their motor vehicles. The record reflects that each of the petitioners was earning only about four hundred dollars per month at the time their plates were seized, and had changed policies or companies out of economic necessity in order to take advantage of lower rates elsewhere. They relied upon their agent as the embodiment of their "insurance company" to insure that the authorities were properly notified of their new insurance status. Considering the socio-economic factors at work and the concomitant level of sophistication on the part of the petitioners, such reliance was not unreasonable.

Without question, this system of enforcement "imposes unreasonable burdens, greatly disproportionate to the resultant public benefit." *See* Syl. pt. 2, *State v. Baltimore & Ohio Railroad Company, supra;* Syl. pt. 5, *Pond Creek Pocahontas Co. v. Alexander, supra.* Certainly, motorists may be charged fees if, in fact, they did not have insurance at the time their plates were seized. The statute is silent, however, as to whether motorists who had insurance at the time of confiscation are precluded from securing the return of their places without payment of the fees involved. Therefore, the Court should have acted to prevent the manifest injustice created by this draconian enforcement mechanism, "as it can scarcely be presumed that an injustice was in the legislative intent." *See Dickey v. Smith,* 42 W.Va. at 809, 26 S.E. at 375.

In addition to the injustice caused by the majority's disregard of well established rules of statutory construction, the opinion also ignores basic rules of agency by failing to impute notice given to law enforcement officials seizing motorists' plates concerning the existence of insurance to the Department of Motor Vehicles. It is a well settled rule of agency in this jurisdiction that, "Notice to an agent in the course of his employment, in relation to a matter within the scope of his authority, is notice to his principal, whether he communicate[s] his knowledge to his principal or not." Syl. pt. 1, *The Buckeye Saw Mfg. Co. v. Rutherford,* 65 W.Va. 395, 64 S.E. 444 (1909); *see also* Syl. pt. 1, *Great Eastern Refining Corp. v. Shank,* 99 W.Va. 101, 127 S.E. 922 (1925); Syl. pt. 8, *Morgan-Gardner Elec. Co. v. Beelick Knob Coal Co.,* 91 W.Va. 347, 112 S.E. 587 (1922); Syl. pt. 1, *George v. Stansbury,* 90 W.Va. 593, 111 S.E. 598 (1922); Syl. pt. 3, *Hains v. Parkersburg, M. & I. Ry. Co.,* 75 W.Va. 613, 84 S.E. 923 (1915); Syl. pt. 6, *Cassiday Fork Boom & Lumber Co. v. Terry,* 69 W.Va. 572, 73 S.E. 278 (1912); Syl. pt. 2, *W.F. Black & Sons v. Johnson & Son,* 65 W.Va. 518, 64 S.E. 626 (1909); Syl. pt. 5, *Newlin v. Beard,* 6 W.Va. 110 (1873).

Unquestionably, law enforcement officers who seize plates from motorists act under the direction and control of, and as agent for, the Department of Motor Vehicles. Notice to these officers of the existence of insurance on the motor vehicles involved is imputed under the law of agency to the Department of Motor Vehicles. The Commissioner should not be permitted to suspend vehicle registration when he or she has this knowledge, and law enforcement officers should not be permitted to plead the Nuremberg defense, "I was only following orders." The seizure of plates when an officer, and therefore the Department of Motor Vehicles, has knowledge of the existence of insurance is both irrational and unjust.

Equally irrational and unjust is placing the burden on motorists to notify the Department of Motor Vehicles when changes in insurance companies or insurance poli-

cies are made. It makes no sense for West Virginia Code § 17D–2A–5(a) (1983 Supp.), to require insurance companies to notify the Commissioner of the effective date of *cancellation* or *termination* of old insurance policies without a corresponding requirement that they also notify the Commissioner of the effective date of *initiation* of new insurance policies. To place the burden of this hiatus in the legislative scheme on innocent motorists is both insensitive and unnecessary.

For the foregoing reasons, I must respectfully dissent.