# CHARLESTON.

### HASSON *v.* CITY OF CHESTER.

### Decided March 22, 1910.

1. STATUTES—*Construction—Remedial Statutes.*

    That which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed.

2. SAME—*Construction.*

    Of two permissible constructions of a statute, one working manifest injustice and the other equity and fairness, the latter is to be adopted, upon the presumption that the legislature did not intend the results flowing from the former.

3. ELECTIONS—*Commissioners of Election—Representation of Parties—Construction of Statutes.*

    Section 7 of chapter 3 of the Code of 1906, relating to the appointment of commissioners of election, impliedly gives right of representation of the two leading political parties in every election and prescribes a mode of determining the right of preference, giving it to those whose candidates received the highest number of votes in the last preceding election, when there are such parties.

4. ELECTION—*Commissioners of Election—Representation of Parties.*

    When none of the parties, participating in any election, took part as an organization in the last preceding election, the statutory rule for determining right of preference is inoperative, but the two leading parties are nevertheless entitled to representation and may demand the appointment of qualified persons, designated by them for commissioners and challengers.

5. SAME—*Political Parties—Position in Municipal Elections.*

    A political party or organization for national, state, county and magisterial district elections is not one for the purposes of

a municipal election, unless the members thereof participate as such an organization in the latter by the nomination and support of candidates therein under the party name.

*Mandamus* by George A. Hasson against Frank G. Chapman, mayor of the city of Chester, and others.

*Writ Granted.*

*George L. Bambrick, Frank L. Bradley,* and *J. B. Sommerville,* for petitioner.

*Henry M. Russell,* for respondents.

POFFENBARGER, JUDGE:

For a municipal election in the City of Chester, Hancock county, the republican voters nominated a full set of candidates by convention. Another body of voters nominated a full list ·of candidates by a petition in which their organization was named the Independent Party. A third body, calling themselves the democratic party, held a meeting at which they passed resolutions, declaring their allegiance to certain principles, and appointed a committee for service in the election, but did not nominate any candidates to be voted for therein. Each of these organizations demanded representation in the precinct boards of commissioners, · appointed to conduct the election, and a challenger at each precinct. Accordingly the respective committees of the independent and democratic parties designated, for appointment by the council of the town, one man for commissioner and one for challenger at each precinct. The republican committee also made recommendations, and the council, deeming the independent party not entitled to representation because it was a new party, refused to appoint the men named by its committee and appointed those designated by the republican and democratic committees. Thereupon Geo. A. Hasson, the candidate nominated for mayor by the independent party, applied to this Court for a peremptory writ of *mandamus* to compel the council to appoint, as commissioners and challengers, the persons named for said positions by the executive committee of his party.

Section 7 of chapter 3 of the Code of 1906, relating· to general elections, as modified by section 85 of said chapter,

adopting it for the purposes of municipal elections, governs the appointment of commissioners. As so modified, said section requires the council to appoint three qualified voters as commissioners of election for each precinct. in the city or town. The persons so appointed must be of good standing and character and not addicted to drunkenness. These provisions are followed by this clause: "They shall be selected from the two political parties which at the last preceding election cast the highest number of votes, * *, * and not more than two of them shall belong to the same political party." It is then provided that if the executive committee of either party from which such commissioners are to be selected or appointed, shall present a writing signed by them or their chairmen, requesting the appointment of a qualified voter of their political party, it shall be the duty of the council to appoint such person. As to challengers the statute, as applied to municipal corporations, requires the council to appoint members of the two leading parties, upon the nomination of the chairmen of their committees.

Though a great many previous elections have been held in the City of Chester, no regularly organized political parties ever participated therein as such. In other words, no party candidates were ever nominated for such elections. For general political purposes the voters have been divided between the two great political organizations, republican and democratic, but they have never participated in these municipal elections as such, nor otherwise than as citizens. This is an established fact in the case, in view of which, it is clear that all three of these parties, the republican, democratic and independent, are new parties for the purposes of the election. The council, in making its appointments, must have determined the status of the republican and democratic parties by votes cast for their candidates in prior magisterial district, county, state and national elections, since it regarded them as parties having received the highest number of votes in the last preceding election. This is not the test for municipal elections. Section 85 of chapter 3 of the Code of 1906 expressly rejects it by recognition of the well known fact, that the regular political parties do not always participate as such in municipal elections. It says "The rights of designation of election officers by political parties shall be

exercised by the chairman of committees of such parties in the municipality, if such there be." This necessarily negatives the idea of recognition, for municipal elections, of the general political parties; but terms of negation are not necessary, for the elections are separate and distinct in nature. It is essential to the recognition of parties in such elections that they organize for, and participate in, them, as such, and, when they have done that, their status must be determined by the votes cast for their candidates in the last preceding municipal election. From this conclusion, it follows that none of these political parties had any record in the last preceding municipal election, entitling them to preference in the selection of election commissioners and challengers. They are all new parties for the purposes of this election.

The council fell into another error in considering the democratic organization as a party at all. It had not nominated any candidates. Neither its members nor any other voters could vote for anybody in the election as a democrat. Nobody was running or soliciting votes as a democratic nominee. The record before the council disclosed only two sets of candidates, republican and independent, between whom and their associates the contest was to occur and be fought out. The gentlemen who affiliate with the democratic party in general politics were not maintaining such affiliation in the municipal contest. They necessarily intended to vote as republicans and independents. Nominated candidates are the leaders and representatives of organizations. They are essential to organized participation in an election. A party, not so represented, is not participating as an organization at all. The whole system of statutory regulation is founded upon the assumption of such representation. Party organization for an election begins with the nomination of candidates by convention, primary election or petition.

In view of this situation, what was the duty of the council? If the mere letter of he statute is to be regarded, neither of the two parties having candidates in the field was entitled to representation, for neither of them had made any record of votes cast for its candidates in the last preceding election. Did this circumstance confer upon the council discretion to ignore the recommendation, made by all the committees, and appoint men of its own selection for commissioners and challengers?

There is no express direction as to what its duty is under such circumstances. As that duty is not found in the letter of the statute, it must be disclosed by its spirit or not at all. Does it confer upon the leading parties right to representation in the election boards in all elections, when there are such parties, or does it give it only when the existence of such parties is shown by the record of the last preceding election? Fairly construed, we think it impliedly adopts the principle of such representation in all elections in which political parties or organizations participate. It does not say in express terms the right of representation shall exist in any election, but on the assumption that it does exist, it prescribes a method for determining the right of preference. Having impliedly recognized the right of representation, it does not limit it. Nowhere does it say the leading parties shall not have representation. Nowhere does it say, in express terms, they shall have it. But that they do not have it is assumed by the prescription of a method of determining the right of preference. By this provision, it is impliedly given, and, being given, it is not limited or restricted. Given in general elections and not denied in municipal elections, given, when there are leading parties as shown by preceding elections, and not denied, when there are leading parties, but not shown to be such by the preceding election, it must be assumed the legislature intended it for all elections. The plain purpose of the statute is to give representation to the leading parties in the interest of fairness and honesty in elections. *Prima facie* right, shown by the face of election returns, is substantial and important. Knowledge of what occurs in the election rooms is essential to the ascertainment of both the *prima facie* and ultimate rights of candidates. Representation of the leading parties, having candidates in the field, is promotive and protective of both of these important rights. It is impliedly given by the statute and not expressly limited, as we have seen. The rule of liberal construction applies, since the statute is remedial and not penal. "A thing within the intention of the makers of the statute is as much within the statute as if it were within the letter." *Stowel* v. *Zouch,* 1 Plowd. 366. See also *United States* v. *Freeman,* 3 How. (U. S.) 565; *United States* v. *Babbitt,* 66 U. S. 55; *State* v. *Harden,* 62 W. Va. 313, 345; *Layne* v. *Railway Co.,* 66 W. Va. 607;

*Delaplane* v. *Crenshaw,* 15 Grat. 457; *Postmaster Gen.* v. *Early,* 12 Wheat. 136. This rule of construction was applied, in *Layne* v. *Railroad Co.,* under circumstances and conditions very similar to those found here.

This construction makes the statute operate equitably and justly. That contended for by the defendants would make it work injustice and oppression. With a partisan council or county court and two hostile committees of parties without candidates in the election, the real contestants could be denied all representation in the election rooms and all knowledge of transactions, occuring therein, however irregular, illegal or even fraudulent. A construction, making such results possible, should never be adopted, if the terms of the statute, viewed in the light of its purpose and spirit, will permit any other, productive of fair and just results. *Dickey* v. *Smith,* 42 W. Va. 805; *Old Dominion &c. Ass'n* v. *Sohn,* 54 W. Va. 101; *Immigration Society* v. *Com.,* 103 Va. 46.

Agreeably to these views, principles and conclusions, we have held the democratic committee not entitled to designate persons for commissioners and challengers and awarded the writ, prayed for, commanding the council to appoint the persons designated for commissioners and challengers by the committee of the independent party.

*Writ Granted.*

NOTE BY WILLIAMS, JUDGE:

I concur in the granting of the writ of *mandamus* in this case and in the conclusion reached by Judge POFFENBARGER in his opinion, but I do not altogether agree with the construction which he gives to section 7 of the election law. I agree that the purpose of the statute is to provide that the two leading political parties shall have representation on the boards of election commissioners at the various voting precincts, as a means of insuring fair elections. But at the same time, the statute prescribes a rule for ascertaining which are the two leading political parties. They are the ones which cast the highest vote in the last preceding election. This rule for ascertaining the two leading parties I believe to be mandatory. The statute has a two-fold purpose, (1) to give representation to

the two leading political parties and (2) to provide a manner of selecting election commissioners that will be sufficiently certain and definite to avoid confusion and controversy on the eve of an election. The only practical way of determining what political parties are the leading ones is by the vote of the last preceding election. Section 85 makes the provisions of section 7 apply to municipal elections, and in applying the rule to municipal elections the two sections must be read together. In order to make the two sections harmonize, and preserve the spirit of section 7, in municipal elections, the municipality must be regarded as the voting unit, instead of the magisterial district; and the political parties that participated, as such, in the last municipal election must be regarded as the political parties meant by the act when construing it in relation to municipal elections, and not the leading political parties that participated in the last general election, unless they also participated, as such, in the last municipal election. I can best illustrate my view of the statute by giving a concrete example. Suppose, in the last municipal election, there were three political parties contesting for the municipal offices, known as the democratic party, the peoples party and the independent party, and that the democratic party and the peoples party were the two that cast the highest vote. Suppose, again, that in the next succeeding election the peoples party and the independent party nominate candidates and the democratic party, as such, makes no nomination, under these conditions the peoples party and the democratic party would have the right to nominate election commissioners, notwithstanding the democratic party, as such, had no candidates in the field, and if these two political parties failed to make nominations, then the city council would have to select the election commissioners from among the members of those two parties, regardless of the question whether, or not, they had nominated candidates to be voted for in the election about to be held. It seems to me that any other interpretation of the statute might lead to much confusion. As an instance of possible confusion, suppose, in the case last given, that an entirely new party, known for instance as the civic league party, should nominate candidates and should demand recognition on the boards of election commissioners, claiming to be one of the two leading parties, and that the peoples party and independent

party also have candidates in the field, both claiming the right to nominate election commissioners on the ground that they are the leading political parties. In such case, if the construction given to the statute by Judge Poffenbarger is correct, there is no means of determining which party is entitled to name election commissioners, because the civic league party did not participate in the preceding election and the independent party, as shown by the last preceding election, was only third in point of number of votes cast. In this supposed case I think it is clear that the law intends the election commissioners to be selected from the democratic party and the peoples party, notwithstanding the democratic party, as such, has no candidates in the field to be voted for.

But in the case decided by us the democratic party, as such, had not participated in the last municipal election held in the City of Chester and, therefore, clearly had no right to name the election commissioners; neither did it appear what political parties participated, as such, in the last municipal election, but it did appear that the republican party and the independent party were the only political parties opposing in the election then about to be held, hence they were necessarily the two leading parties, and the ones entitled to nominate the election commissioners, within the intendment of the statute. I also agree that the points of the syllabus correctly express the law, but to be interpreted according to the views herein expressed and not according to those expressed in the opinion of Judge Poffenbarger.

Judges Brannon and Miller concur with me in this opinion.