# CHARLESTON.

STATE *ex rel.* HARRY W. HALL *v.* E. O. COTTRILL, *Mayor, etc. et al.*

(No. 6525)

Submitted May 17, 1929.     Decided May 28, 1929.

*Homer Blizzard* and *England & Ritchie,* for relator.
*Lilly & Lilly* and *D. B. Dawson,* for respondents.

WOODS, PRESIDENT:

The relator, as chairman of the Republican executive committee of the city of Dunbar, seeks a peremptory writ of mandamus commanding the common council of said city to reconvene and rescind its order appointing officers to conduct the city election to be held on June 4, 1929, and to appoint one commissioner, one poll clerk, and one challenger, recommended by the relator on behalf of the said committee, for each of the various precincts of said city.

The respondents do not controvert the allegations in the petition to the effect that the relator is the chairman of the so-called executive committee, or that the committee as now constituted is the chosen representative of the Republican party. They do, however, deny that the committee, as such, has any legal status either by the charter of the city, or under the general law, and therefore that the relator, as chairman thereof, has no right to require the common council to name election officers selected by such executive committee.

Section 85, Chapter 3, Code, recognizes the right of party organization, even in municipal elections, for it is stated therein that "the rights of designation of election officers by political parties shall be exercised by the chairman of committees of such parties in the municipality if such there be."
Also see: *Hasson* v. *City of Chester,* 67 W. Va. 278; *State* v.

*Lambert,* 83 W. Va. 143. And by virtue of the same section, it is provided that every municipal election shall be held in conformity with the provisions of the general election law and that the duties required of the commissioners of the county court shall be performed by the municipal council.

Under the general election law it is clear that a city council, in the absence of a provision in its charter to the contrary, would have authority to appoint commissioners of election and challengers. *State* v. *Lambert, supra.* While section 93, providing for challengers, etc., was omitted, together with certain other sections, from Barnes' 1923 Code, with the notation that it had been superseded by the Acts of 1908, *et seq.,* so much of that section as relates to challengers is still in effect. That portion of the section has been recognized since its passage in 1905, in later acts of the Legislature relating to the pay of challengers (Acts Ex. Sess. 1920, Chap. 2, section 6; Acts 1923, Chapter 24, section 6), and has the sanction of this Court in its decision in 1919 in the case of *State* v. *Lambert, supra.* In the selection of officers for the several voting precincts in a general election, under sections 7 and 93 (See Barnes Code 1918) of Chapter 3, Code, the county court is required to appoint at least one commissioner and one challenger from each of the two political parties, which at the last preceding election cast the highest number of votes in the magisterial district in which the election is about to be held; the county court to be governed in their appointments by the nominations made by the chairmen of said parties. Section 14 of the charter of the city of Dunbar provides, "All city elections, regular or special, shall conform as nearly as possible to the election law contained in Chapter three of the Code of West Virginia." And in another section expressly authorizes the council to appoint three commissioners and two poll clerks. In so far as this authority provides for the appointment of commissioners, it is merely declaratory of the general law. And no reference being made to the appointment of the challengers, the general law will apply.

But what rights have the committees of the two major political parties in relation to the appointment of poll clerks?

There is no provision in the general law giving them the right to recommend, except in primary elections; so the express charter provision giving the city council the right of appointment is in lieu of the provisions of the general law relating to general elections, providing for their selection by the commissioners of election or the partymen at the polls on election day. Had the charter been silent regarding the appointment of poll clerks, this Court would have no trouble in holding that they should be appointed as by general law. But, in the face of the charter, we must hold that the council has the right to appoint. However much we may be impressed with the justice of the right to secure party representation as contended for by the relator in this respect, there is absence of that legal authority required in section 89 of Chapter 3 of the Code necessary to call into existence the extraordinary writ of mandamus to compel the council, in the exercise of its power under the charter, to appoint the persons so recommended by the relator to that office. There is no claim here that the council has failed to recognize the two dominant parties in its action. On the contrary it does appear from the record that it has, in the exercise of its authority, appointed representatives from each party. So, the question of the remedy in case it failed to so act is not before us.

We, therefore, are of opinion to grant so much of the prayer of the petition as prayed for, commanding the council to re-convene and rescind its order appointing election commissioners to conduct the city election, and require it to appoint one commissioner and one challenger in each voting precinct in said city as recommended by the petitioner on behalf of the Republican executive committee, to act in said election.

And so defined, the writ is awarded.

*Writ awarded.*