MINGO COUNTY TAXPAYERS ASSOCIATION *et al. v.* THE BOARD OF EDUCATION OF MINGO COUNTY *et al.*

(No. 9059)

Submitted January 8, 1940. Decided February 27, 1940.

*Goodykoontz & Slaven,* for relator.
*Lafe B. Chafin,* for respondent.

HATCHER, JUDGE:

This is a proceeding in mandamus.

The Board of Education of Mingo County called a special election to authorize additional levies for school

purposes and without recommendation from the two dominant political parties in the county, appointed officers to hold the election. The great majority of these appointees are either employed directly by the Board, or are closely related to school teachers or others employed by it. For the purpose, primarily, of opposing the proposed levies, certain representative citizens of the county promptly organized Mingo County Taxpayers Association, a corporation. It furnished the Board a list of persons, requesting that, from the list, two persons, one as commissioner and one as clerk, be appointed to serve at each precinct. The request was denied. Later, the Republican Executive Committee of the county recommended the same list to the Board, with like result. The Association brought this proceeding to compel compliance with its request.

Code, 13-1-11 provides that the general election laws of the state shall apply to bond elections "in so far as practicable." Those laws require the appointment of election officials from the two political parties polling the highest number of votes at the preceding general election. The purpose of the requirement is to have an election conducted by representatives of well recognized organizations which disagree upon the major issue before the electorate. The issue here is not political at all, but fiscal. Hence, appointment of election officials according to political affiliation is not practicable, because such method does not conform to "the spirit, meaning and purpose" of the laws as required by *Hasson* v. *Chester*, 67 W. Va. 278, 67 S. E. 731. The Board avers that it does not know how its appointees regard the proposed levies. To meet the purpose of the laws, however, we are of opinion that well recognized opposition to the levies should be officially represented within the polls.

The writ will issue.

*Writ awarded.*

KENNA, JUDGE, dissenting:

The question to be decided in this proceeding is whether the general election laws and particularly Code, 3-5-9,

providing for the appointment of commissioners and clerks at elections dealing with the persons to be selected to occupy public offices, apply to what may be referred to as an election *in rem* or one to authorize the incurring of an indebtedness and the issuance of bonds for the purpose of meeting it and, in the case before us, involving also a special levy for the purpose of meeting the carrying charges and accumulating the retirement fund. Dealing with elections to fill public office, the section in question provides that county courts shall sit on the first Tuesday in the month next preceding the day upon which such an election is to be held and shall then and there appoint three commissioners and two poll clerks to be selected from the two political parties which at the last preceding election cast the highest and second highest number of votes in this state. The prescribed method of making the appointment is that if at any time before or during the session of the court at which the election officers are to be appointed, the county executive committee of either or both of the political parties from which commissioners and clerks are to be selected shall file with or present to the county court a writing requesting the appointment of a member of that party as commissioner and one as clerk in the several voting precincts affected, they shall be appointed.

Code, 13-1-11, being a part of the article covering public bonded indebtedness and submitting kindred questions to popular vote, stipulates that the general election laws of this state shall apply to the conduct of bond elections under that article (a) when not in conflict with the provisions thereof, and (b) in so far as practicable. Code, 13-1-4, vests in the governing bodies and political divisions throughout the state the authority to submit to the people the question of whether an indebtedness shall be contracted and bonds to cover it shall be issued and prescribes the form of order to be entered in the fiscal bodies' public records and the exact information that shall be made available to the public at large by means of that order.

I believe that Code, 3-5-9, is plainly not meant to apply to a bond election called by a board of education. In so far as the issues involved in a bond election are concerned, or could with the remotest possibility become concerned, there has been no "last preceding election". Neither are there "two political parties" which theoretically would occupy hostile positions in a bond election. There are many other ways it could be pointed out which make it impractical to apply the provisions of this section to a bond election called by a fiscal body representing a governmental division, including that part of the same section providing for a double board of election officers in precincts containing four hundred or more registered votes. Furthermore, under this section there is no fixed time that a board of education could be required to convene for the purpose of receiving nominations and making appointments of election officials.

In the case now before the Court, the board of education met on the fifth day of December, and at that time indicated that it had the matter of a special levy and a bond election under serious consideration and would pass upon both questions at an adjourned meeting on December twelfth. It met again on the twelfth day of December, and in the intervening week, in spite of the fact that meetings of the board of education are open to the public and its records are subject to public inspection, nothing occurred. On the last named date, a resolution submitting to the people on January the twelfth the question of authorizing bonds and the question of authorizing a special levy, as well as appointing the commissioners and clerks, was adopted, spread upon its record and ordered to be published.

According to the allegations of the petition, the Mingo County Taxpayers Association was chartered by the Secretary of State on the fifteenth day of December, three days after the election officials had been appointed and ten days after the board had signified its purpose. The association had five incorporators. On the sixteenth day of December, the incorporators met and chose a board of

directors comprised of nine individuals. On the same day, the board of directors met with six of its nine members present and adopted a motion recommending the appointment of clerks and commissioners.

On December the thirtieth, the Republican executive committee of Mingo County with seven of its eighteen members present in person, seven absent, and four others listed as being represented by proxy, the holders of which are not named, met and passed a resolution, the preamble of which contains recitals of the committee's belief that the approval or rejection of the proposal to issue bonds in Mingo County for educational purposes in no sense should be considered a partisan or political question; that the committee's principal interest is to see that a fair and just election is held; that the board of education had already appointed the entire number of people to serve as election commissioners and clerks, and that the great majority of their appointees are either employed by the board, related to employees of the board, or have business or family connections with a member of the board, and concludes by indorsing the list of election officials prepared by the association.

The petition's allegations disclose no statutory requirement that has not been complied with nor any statutory inhibition which has been violated. I do not believe that elections should be conducted as directed by the judiciary. With the greatest of deference, I believe that in this opinion my associates, finding no legislative requirements that had been disregarded, have voiced a doctrine independent of any definitely ascertainable legal requirements.

Generally speaking, the election laws should be comprised of standard requirements and inhibitions to be adhered to throughout the state. To my mind, the phrase "well recognized opposition" as used in the majority opinion will have the effect of muddying the water beyond clarification. In this instance, the Mingo County Taxpayers Association, at the time they filed their petition before the board of education nominating a commissioner

and a clerk at each polling place in the county, was comprised of eleven members as compared with a total population of more than 38,319 in the county to be affected. If eleven persons can constitute a well recognized opposition, the natural query is how many well recognized oppositions are to be accorded the privilege of naming clerks and commissioners? And is the special election to become involved in litigation in order to determine which eleven men constitute a well recognized opposition and which eleven men do not? Perhaps it may be said that the majority opinion does not define that term. However, the logical outgrowth of granting the writ upon the application of the taxpayers association, they being the only opposition disclosed by the record before the Court, is to say that eleven persons who feel imposed upon may, evidently in anticipation of what their business and political status may accomplish, be recognized as opposition upon the same basis as one or the other of the major political parties in the United States is recognized under our general election law.

I do not wish to be understood as either approving or disapproving the course of conduct pursued by the board of education. I do not believe that it is either expedient or necessary for the judiciary to lay down the rule for what may be termed political morality. That burden rests upon the legislative department (see *Morris* v. *Board of Canvassers,* 49 W. Va. 251, 264, 38 S. E. 500), and if its members fail to correctly diagnose public sentiment, little time elapses before they may be brought to book.

The right to nominate a commissioner and a poll clerk is a right specifically granted by the legislature under our general election laws. No such right is granted by the legislature in the enactment according to boards of education the right to call special elections at which the issuance of bonds for educational purposes is to be submitted to popular vote. There is no such right accorded in the constitutional stipulations which apply directly or indirectly. For this Court to establish the principle contained in the majority opinion is going to cast grave doubt

as to where the power rests, and from what source the power is derived to impose regulatory requirements upon the conduct of elections.

It is to be noted that the Mingo County Taxpayers Association came into existence three days after the bond election had been called by the board of education and after that body had appointed the commissioners and clerks for all of the voting precincts in the county, and that the attitude of the Republican executive committee was predicated solely upon the association's request for the appointment of election officers. In other words, to state the matter bluntly, I fear the effect of the writ awarded by the majority is to attempt the enforcement of non-existent privileges at the behest of a litigant not in existence at the only time those privileges could have been asserted.