# CHARLESTON

## State v. Baltimore & Ohio Railroad Company.

Submitted January 15, 1907.    Decided February 19, 1907.

1. RAILROADS—*Stations—Accommodations for Passengers.*
   Chapter 69 of the Acts of 1891, section 71a of chapter 54 of the Code, section 2382, Code of 1906, requiring railway companies and persons operating railroads, to provide and keep, among other things, for the accommodation of travelers, suitable water-closets, "at all stations," does not contemplate the maintenance and keeping of such retiring places at what are commonly known as "flag stations," mere open platforms in connection with which no station buildings, offices or agents are kept. (p. 368.)

2. STATUTES—*Construction.*
   A statute is to be interpreted in the light of the nature of its subject matter, the purpose of the legislature in passing it, and the conditions and circumstances under which the law making body must have known it would operate; and, upon these considerations, it will not be so interpreted as to make it impose unreasonable burdens, greatly disproportionate to the resultant public benefit, unless its terms are so explicit and positive as to preclude any other construction. (p. 368.)

Error to Circuit Court, Barbour County.

The Baltimore & Ohio Railroad Company was convicted of violation of a statutory provision, and brings error.

*Reversed.   Remanded.*

FRED. O. BLUE, for plaintiff in error.

CLARKE W. MAY, Attorney General, for the State.

POFFENBARGER, JUDGE:

The Baltimore and Ohio Railroad Company complains of a judgment, convicting it under an indictment, charging violation of section 1 of chapter 69 of the Acts of 1891, constituting section 2382 of the Code of 1906, by failure to maintain a water closet at its alleged station in Barbour county, called Cove Run, and imposing a fine of ten dollars.

At the so-called station, the railway company has a water tank and a small platform for the accommodation of passengers and the reception and discharge of freight, but sells no tickets, keeps no office, and rarely collects any freight charges there, freight on all shipments to and from that point being prepaid. There are three dwelling houses close to the platform, of which one is owned by the daughter of Geo. W. Johnson, another by the wife of said Johnson and the third by some one whose name is not disclosed. The house owned by Johnson's daughter is used for dwelling and mercantile purposes. Johnson lives in it with his family and his wife has a grocery store in a portion of it. In the room used for the grocery, the daughter keeps the post office, and persons waiting for trains are allowed to use that room in return for which accommodation the railroad company furnishes coal to maintain the fire. The house owned by Johnson's wife is vacant and the third house is occupied by one Murphy. There is no other house nearer than half a mile. The station is what is known as a flag station, and the question presented is whether it is a station within the meaning of said statute, requiring all railroad companies to provide and keep for the accommodation of travelers suitable water-closets "at all stations."

Obviously the words "all stations" literally include flag stations, but the words used by the legislature must be interpreted in the light of the nature of the subject matter of the statute and the conditions and circumstances, suggested respectively by the term "station" on the one hand, and the

words "flag station" on the other. It is a matter of knowl-
edge and information common to legislators, judges and all
other persons that, as a general rule, there is no necessity
for the maintenance of retiring places at ordinary flag sta-
tions. Such stations are used, for the most part, by only a
few people, residing in the immediate vicinity, all well known
to one another and among whom neighborhood courtesy and
hospitality prevail. Besides at nearly all such stations, con-
venient places of retirement can be found. This is not true
of stations in villages, towns and cities. There, the main-
tenance of retiring places is almost an absolute necessity.
The means of privacy afforded by the nature of the ground,
timber and structures are no longer available. Every spot,
nook and corner is under the observation of the occupants of
some building. Such great differences in conditions and cir-
cumstances are never ignored in legislation, and courts can-
not refuse to take notice of them when called upon to say
what a statute means. The spirit and reason of the law
must be considered as well as its letter. We cannot bring
ourselves to the conclusion that the legislature intended to
compel railroad companies to maintain water closets at flag
stations. Many of them are really provided for the accom-
modation of single families or small groups of families in
the several neighborhoods. Who would take care of them?
Are the railroads to keep persons stationed at these places
for the sole purpose of attending to such buildings? Are
the section men to be ever at hand to see that they are in
suitable condition on the arrival of trains? At regular sta-
tions, the agent is always on the ground and there the bur-
den of caring for these retiring places amounts to nothing.
At flag stations it would be onerous.

 In thus considering the nature of the subject matter of the
statute and the facts which have been within the knowledge
of the legislature, and adopting a construction which will
make the statute operate reasonably and justly, we are sus-
tained by the great weight of authority. "The character of the
accommodations required varies, of course, with the amount of
business done at a particular point, for accommodations of
the same character cannot be expected in cities and at way
stations; and this rule has been recognized even in jurisdic-
tions where statutes exist upon the subject. In the case of

flag stations and mere road crossings at which trains stop only on signal and for the convenience of persons wishing to take the train, railway companies may be relieved altogether of the obligation to furnish depots or platforms." Hutch. on Carriers, section 929. A case perhaps more directly in point here than any other is that of *State* v. *Railroad Co.*, 76 Minn. 469. A statute required all railroad companies to provide at "all villages and boroughs" on their respective roads, depots with suitable waiting rooms for the protection and accommodation of passengers. The Railroad and Warehouse Commissioners applied for a *mandamus* to compel the railroad company to build and maintain a station house at a small unincorporated village. Notwithstanding the use in the statue of the term "all villages and boroughs," the court refused the writ, saying: "If the word 'village,' in this act, is to be given its general popular meaning, as contended for by counsel for the relators, it would be the absolute duty of a railroad company to provide and maintain such a station at every little hamlet along its line, without regard to its size or the amount of its business, and without regard to its proximity to other stations, or to the necessities or convenience of the public. It is not to be lightly assumed that the legislature intended to impose any such onerous and unreasonable duties upon railroad companies." The word "villages" was construed to mean incorporated villages.

The defendant undertook to prove, by a witness and by the introduction of a copy of its time table, that the station in question is a mere flag station. To the introduction of this evidence, an objection interposed by the state, was sustained. This is assigned as error, and, from what has been said, it is apparent that the exception was well taken. The evidence should have been admitted.

For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.    Remanded.*