POND CREEK POCAHONTAS COMPANY, *et al.*

*v.*

ARCH J. ALEXANDER, CHIEF OF THE DEPARTMENT OF MINES, *etc., et al.*

(No. 10537)

Submitted February 17, 1953. Decided March 3, 1953.

*Campbell, McNeer & Woods, Charles F. Bagley, Jr.,* and *F. A. MacDonald, Rose, Rose & Houston, Don Rose* and *Harold R. Schmidt,* for appellants.

*John G. Fox,* Attorney General, *George W. Stokes,* Assistant Attorney General, for appellees.

RILEY, JUDGE:

Pond Creek Pocahontas Company, a corporation, and National Mine Service Company, a corporation, instituted this proceeding in the Circuit Court of Kanawha County, against Arch J. Alexander, individually and as Chief of

the Department of Mines of the State of West Virginia, Joseph J. Bierer, Acting Chief of the Department of Mines, E. L. Chatfield, inspector at large of the Department of Mines, and Elmer Farmer, mine inspector of the Department of Mines, for a declaratory judgment construing Section 18, Chapter 10, Acts of the Legislature, Regular Session, 1915, as reenacted by Section 13 (h), Chapter 88, Acts of the Legislature, Regular Session, 1925, incorporated in the Official Code of West Virginia, 1931, as Chapter 22, Article 2, Section 10. The circuit court, having sustained a demurrer to the petition of Pond Creek Pocahontas Company and National Mine Service Company filed in that court, and by final decree having dismissed the petition, the petitioners prosecute their appeal in this Court.

The petitioner, Pond Creek Pocahontas Company, a mining company operating coal mines in McDowell County, West Virginia, and in Kentucky, purchased from its co-petitioner, National Mine Service Company, a manufacturer of mine equipment, having a place of business in Beckley, West Virginia, a ten-ton diesel haulage locomotive, designed for haulage purposes in the main haulways of the coal company's mine No. 6, near Bradshaw in McDowell County, powered by a product of petroleum. The use of this locomotive was approved by the Bureau of Mines of the United States Department of the Interior, subject to strict regulations and inhibitions contained and prescribed in Schedule 22, issued by that bureau. Following such approval, the Honorable Arch J. Alexander, then Chief of the Department of Mines of West Virginia, approved the use of the locomotive in the coal company's mine No. 6, located in McDowell County. Thereafter, by letter dated August 27, 1951, the Attorney General of this State, through the Honorable George W. Stokes, an Assistant Attorney General, advised the Chief of the Department of Mines that the use of the diesel locomotive contemplated by the coal company, violated Code, 22-2-10, in that it was proposed to be operated by the use of a product of petroleum. Alexander, by letter dated January 8, 1952, addressed to petitioner coal company at its office

at Huntington, informed petitioner that he had personally examined and tested the locomotive at its location at mine No. 6, and, as a result of that examination, he was of opinion that the locomotive would not endanger the health or safety of miners working in petitioner's mine, and would not contaminate the air to such extent as to be injurious to the health of any miner working therein. He further stated that Elmer Farmer, mine inspector for the district in which petitioner's mines are located, and John Petty, electrical inspector, who were present at the time the examination and testing were done, joined in the mine department's opinion. This letter further informed petitioner coal company as follows:

"Accordingly, I not only refuse to approve the use of your locomotive, and others similar thereto, in your mines, when using as fuel a product of petroleum, but I hereby cancel and withdraw the approval which I have heretofore given you; and I am further compelled to advise you that if you use such locomotive so powered in any of your mines in this state, I will invoke and enforce against you the applicable provisions of the West Virginia Mine Laws and will cause to be closed the mine or mines in which the locomotive or others similar thereto may be so used, notwithstanding that I am of the opinion that the use of such locomotive so powered will not render the operation of your mine unsafe and will not contaminate the air in any such mine to such an extent as to be injurious to the health of any miner therein."

From the prayer of the petition it appears that the petitioners seek a declaratory judgment declaring: (1) That Section 10, Article 2, of Chapter 22, Code, 1931, does not prohibit the operation of the locomotive involved, and others similar thereto, in the underground mines of the petitioner coal company, where fueled by a product of petroleum "where the inspector is of the opinion that such use will not contaminate the air to such an extent as to be injurious to the health of the miner and is otherwise safe"; and (2) that, in so far as the statute prohibits

absolutely and unconditionally the use of products of petroleum as fuel for underground locomotives in Pond Creek Pocahontas Company's mines, or in other underground mines in West Virginia, where such use is safe and reasonable, Section 10, Article 2, Chapter 22, Code, 1931, is unconstitutional and void as being in contravention of Section 10, Article III, West Virginia Constitution and the Fourteenth Amendment to the Constitution of the United States.

Section 18, Chapter 10, Acts of the Legislature, Regular Session, 1915, (now Code, 22-2-10), which was interpreted adversely to the petitioners by the circuit court, and is now before this Court for appraisal and consideration, reads: "No product of petroleum, or alcohol, or any compound that in the opinion of the inspector will contaminate the air to such an extent as to be injurious to the health of the miner shall be used as motive power in any mine."

The errors assigned in this Court are: (1) The trial court erred in sustaining defendants' demurrer to plaintiff's petition for a declaratory judgment; (2) the trial court erred in decreeing and declaring that the statute under appraisement unconditionally prohibits the use of diesel locomotives fueled by a product of petroleum as motive power in any coal mine in this State; (3) the trial court erred in decreeing and declaring that under the statute the Department of Mines of West Virginia has no authority to determine whether the use of a diesel locomotive fueled by a product of petroleum as motive power in any coal mine in this State will contaminate the mine to such extent as to be injurious to the health of the miners working therein; and (4) the court erred in decreeing and declaring that the statute under appraisement if construed as invoking an unconditional prohibition of the use of diesel locomotives, fueled by a product of petroleum as motive power in any coal mine in this State, is a reasonable exercise of the police power of the State, which does not contravene the Fourteenth Amend-

ment to the Constitution of the United States and the due process clause contained in Section 10 of Article III of the Constitution of this State.

The record discloses that after the initial enactment of the statute diesel mine locomotives were developed for use in underground mines outside of the United States. It is suggested by counsel for Pond Creek Pocahontas Company and National Mine Service Company that such locomotives are approved for underground mines and are currently used in Great Britain, France, Germany, Belgium, Canada, and the Union of South Africa; and that in keeping with its policy of attempting to make coal mining in the United States safe and efficient, the Bureau of Mines of the United States Department of the Interior investigated the use of diesel mine locomotives in those countries, and on September 2, 1944, established and prescribed safety standards to be followed in the design, construction, and use of diesel locomotives in underground mines. Petitioners' counsel urge that if the diesel locomotive involved in this proceeding is operated in accordance with the standards set forth in Schedule 22 of the bureau of mines, it can be operated in the coal company's mine No. 6 with perfect safety, although it is fueled by a product of petroleum; and that such locomotive would not contaminate the air in underground mines to such extent as to be injurious to the health of any miners working therein.

Stated succinctly, the issue between the parties to this controversy is as follows: It is the position of the petitioners, Pond Creek Pocahontas Company and National Mine Service Company, that Code, 22-2-10, should be read so that the words "that in the opinion of the inspector will contaminate the air to such an extent as to be injurious to the health of the miner shall be used as motive power in any mine", should modify the words "No product of petroleum, or alcohol, or any compound." It is the opinion of the attorney general that the above-quoted words should modify only the words "or any compound."

The basic and cardinal rule governing the interpretation of a statute is that the Court should ascertain and apply the legislative intent. *State v. Myers,* 74 W. Va. 488, 82 S. E. 270; *State v. Crawford,* 83 W. Va. 556, 98 S. E. 615; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *Baird-Gatzmer Corp.* v. *Henry Clay Coal Mining Co.,* 131 W. Va. 793, 50 S. E. 2d 673; and *State ex rel. Holbert* v. *Robinson,* 134 W. Va. 524, 59 S. E. 2d 884.

In ascertaining the legislative intent, this Court should take into consideration the conditions and circumstances under which the Legislature must have known the statute would operate. *State v. Baltimore & Ohio Railroad Co.,* 61 W. Va. 367, 56 S. E. 518. And where the meaning of a statute is clear and its provisions unambiguous, this Court will not undertake to construe or interpret the statute, but the Court will, as it is its duty to do, apply the statute as its exact terms require. *State v. Epperly,* 135 W. Va. 377, 65 S. E. 2d 488; *Wilson v. Hix,* 136 W. Va. 59, 65 S. E. 2d 717.

The grammatical structure of Code, 22-2-10, supports the interpretation of Section 10 advocated by the Attorney General. Section 10 is composed of a single sentence, the grammatical skeleton of which is: "product shall be used as power in mine". The subject of the sentence is the noun "product", which is modified by the word "No", and by three prepositional phrases, in the case of "petroleum" expressed, and in the cases of "alcohol" and "any compound" unexpressed. The noun "compound" alone is modified by the clause "that in the opinion of the inspector will contaminate the air to such an extent as to be injurious to the health of the miner." The noun "product" is the subject of the intransitive verb "shall be used", which verb is described by the phrase "as motive power in any mine."

Under this grammatical structure of Code, 22-2-10, Section 10 should be held to read as the Attorney General contends: "No product *of* petroleum, or *of* alcohol, or *of* any compound that in the opinion of the inspector will

contaminate the air to such an extent as to injure the health of the miner shall be used as motive power in any mine."

While the terms of a statute should not literally be applied so as to thwart the evident intent of the Legislature, and in any event statutory terms should be given a substantial meaning, *Bank of Weston* v. *Thomas*, 75 W. Va. 321, 83 S. E. 985; *Barnhart* v. *State Compensation Commissioner*, 128 W. Va. 29, 35 S. E. 2d 686; *State* v. *Hix*, 132 W. Va. 516, 54 S. E. 2d 198, we are of opinion that in this case the construction of the sentence contained in Section 10 is an important aid in determining whether the statute is unambiguous and as an aid in ascertaining the intent of the Legislature.

In determining the legislative intent in the enactment of Section 10, the conditions and circumstances under which the Legislature must have known that the statute would operate are of prime importance. In *State* v. *Baltimore & Ohio Railroad Co.*, 61 W. Va. 367, pt. 2 syl., 56 S. E. 518, this Court held: "A statute is to be interpreted in the light of the nature of its subject matter, the purpose of the legislature in passing it, and the conditions and circumstances under which the law making body must have known it would operate; and, upon these considerations, it will not be so interpreted as to make it impose unreasonable burdens, greatly disproportionate to the resultant public benefit, unless its terms are so explicit and positive as to preclude any other construction."

Section 10 was originally incorporated into the statutory law of this State by Chapter 10, Section 18, Acts of the Legislature, 1915; later in 1925 it was reenacted by Chapter 88, Section 13 (h), Acts of the Legislature, 1925; and still later in 1931 Section 10, as it was originally drafted, was incorporated into the Official Code of 1931, in Chapter 22, Article 2, Section 10. This record clearly discloses that, at the times Section 10 was enacted and reenacted, diesel locomotives had not reached the high state of development and did not have the qualities of safety for haulage in

underground mines suggested by the petitioners. We are, therefore, of the opinion that the Legislature intended to prohibit the use of petroleum as motive power in underground mines as being inherently dangerous and deleterious to the health and safety of the miners working therein.

Section 10 being, in our opinion, clear and unambiguous, viewed in the light of the circumstances at the times of its enactment and reenactment, together with the technical construction of the sentence comprising Section 10, should be applied under *State* v. *Epperly, supra,* and *Wilson* v. *Hix, supra,* so as to prohibit the use of petroleum as motive power in underground mines in this State.

Petitioners contend that Section 10, if construed as invoking an absolute prohibition against petroleum as motive power in underground mines, would be unconstitutional as being violative of the Fourteenth Amendment to the Constitution of the United States, and the due process clause contained in Article III, Section 10, of West Virginia Constitution. That the mining of coal or other minerals in underground mines is inherently dangerous cannot be gainsaid. Section 10, in our opinion, is a valid exercise of the police power, which is inherent in the States of the Union. It was enacted with the evident purpose of protecting the health and safety of those engaged in mining in underground mines in this State. The legislative fiat contained in Section 10 is, in our opinion, not arbitrary and unreasonable, in the light of the circumstances prevailing at the times it was originally enacted and later reenacted.

Petitioners' only relief lies with the Legislature of this State. It is interesting to note that the Legislature has prescribed safety standards for the use of electric power for motive purposes in underground mines and also for the use of kerosene and oil by coal miners in their lamps. Code, Chapter 22, Article 2.

It is also well to note that the statute of Pennsylvania, which is identical with Code, 22-2-10, except that the

Pennsylvania statute, as originally enacted, had no comma after the word "petroleum" but had a comma after the word "miner", was amended in 1937 by the enactment of Section 1020, Chapter 4, Title 52, Purdon's Pennsylvania Statutes, Anno., Perm. Ed., as follows: "No product of petroleum or alcohol, or any compound thereof shall be used, as motive power in any mine, without the written consent of the inspector, which written consent shall state the conditions under which it may be used as a motive fuel."

The decree of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*