# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2019 Term

_____

No. 18-0725

_____

**FILED**
**June 5, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MICHAEL D. MICHAEL,
### ADMINISTRATOR OF THE ESTATE OF
### JACK D. MICHAEL, ET AL.,
Petitioners

### V.

### CONSOLIDATION COAL COMPANY,
Respondent

_____

Certified Questions from the United States Court of Appeals for the Fourth Circuit
The Honorable Barbara Milano Keenan, Circuit Judge
Civil Action No. 17-1564

### CERTIFIED QUESTIONS ANSWERED
_____

Submitted:  March 5, 2019
Filed:  June 5, 2019

Scott S. Segal                                    W. Henry Jernigan
The Segal Law Firm                                William E. Robinson
Charleston, West Virginia                         Dinsmore & Shohl, LLP
Timothy C. Bailey                                 Charleston, West Virginia
Bailey, Javins & Carter, LC                       Alex M. Greenberg
Charleston, West Virginia                         Christopher M. Jones

C. Paul Estep
Estep & Shaffer L.C.
Kingwood, West Virginia
Mark A. Barney
Barney Law PLLC
Hurricane, West Virginia
**Attorneys for the Petitioners**

Dinsmore & Shohl, LLP
Morgantown, West Virginia
**Attorneys for the Respondent**

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE WORKMAN, deeming herself disqualified, did not participate in the decision of this case.**

**JUDGE CARL, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1. "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998)." Syllabus point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).

2. "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*[.]" Syllabus point 3, in part, *Kincaid v. Mangum,* 189 W. Va. 404, 432 S.E.2d 74 (1993).

3. "Chapter 103 of the Code (sections 5, 6, p. 725, Ed. 1891) is the West Virginia Lord Campbell's act, creating a cause of action where none existed at common law for wrongfully causing the death of a person[.]" Syllabus point 1, in part, *Lambert v. Ensign Manufacturing Co.*, 42 W. Va. 813, 26 S.E. 431 (1896), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001).

4. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

**Jenkins, Justice:**

The case *sub judice* concerns a tragic event in this State's coal mining history. On November 20, 1968, seventy-eight miners tragically lost their lives when methane gas exploded at the Consol No. 9 Mine in Farmington, West Virginia. It is within this context that the Petitioners, survivors of those miners, and the Respondent, the parent company of the owner and operator of the subject mine, come to this Court upon questions of law certified by the United States Court of Appeals for the Fourth Circuit.

By the court of appeals' August 15, 2018 certification order, we are asked to determine whether the Petitioners may maintain their cause of action alleging that the Respondent fraudulently concealed facts regarding the cause of the mine explosion such that the Petitioners were prevented from earlier pursuing a claim for the wrongful deaths of their decedents. To reach our decision in this case, we have considered the parties' arguments and briefs, the record designated for our consideration, and the pertinent authorities, including the decisions of the federal courts leading to the court of appeals' certification order as well as the law as it existed in 1968 at the time of the events giving rise to the instant proceeding.

In summary, we conclude that the law in effect at the time of this tragedy did not recognize a cause of action for fraudulent concealment with respect to a statutory wrongful death claim. Moreover, at the time of the 1968 explosion, W. Va. Code § 55-7-

1

required that "[e]very such [wrongful death] action shall be commenced within two years after the death of such deceased person."

# I.

## FACTS AND PROCEDURAL HISTORY

As noted in the preceding introduction, the case *sub judice* concerns the 1968 Farmington mine disaster and has been brought by survivors of the seventy-eight miners who were killed in that tragedy.[1]  In the subject mine, ventilation fans were installed to prevent the accumulation of methane gas, which was released during the extraction of the underground coal and which posed a threat to the safety of the miners working therein.  During the early morning hours of November 20, 1968, a ventilation fan in the Mod's Run section of the mine failed, causing methane gas to accumulate and, eventually, ignite and explode.  Over one hundred miners were working in the affected section of the mine and, while many escaped or were rescued, seventy-eight men perished in the explosion and ensuing fires, some of whom have never been recovered.

---

[1]Given that the instant proceeding involves questions of law certified to this Court, only those facts necessary to establish the framework for those questions will be set forth herein.  For a more detailed account of the underlying facts, see *Michael v. Consolidation Coal Co.*, 744 F. App'x 152 (4th Cir. 2018) (certification order); *Michael v. Consolidation Coal Co.*, No. 1:14CV212, 2017 WL 1197828 (N.D. W. Va. Mar. 31, 2017) (unpublished mem. opinion and order); and *Michael v. Estate of Kovarbasich*, No. 1:14 cv 00212, 2015 WL 5725814 (N.D. W. Va. Sept. 29, 2015) (unpublished mem. opinion and report and recommendation).

Following this tragedy, the federal Mine Safety and Health Administration ("MSHA") inspected the mine to determine how the explosion had occurred. In September 1970, power was restored to the mine in the course of this investigation, at which time it was discovered that the wiring of the Mod's Run ventilation fan had been altered such that it was not connected to the mine's alarm system, but, rather, bypassed the alarm system. Had the ventilation fan been connected to the alarm system at the time of the explosion, when the fan failed to operate, an alarm would have sounded alerting above ground mine staff of the situation, and, if the fan continued to be inoperational, an underground alarm would have sounded to alert the underground miners; additionally, the electricity for the entire mine would have shut off. However, on the day of the explosion, no alarms sounded, either above or below ground, and surface mining operations continued after the explosion and during the ensuing fires.

Larry Layne, the MSHA investigator who made this discovery, with the help of a mine electrician, wrote a memorandum reporting these findings in September 1970 and forwarded it to his superiors; he withheld the name of the mine electrician at the electrician's request. In relevant part, Mr. Layne's memo recounted that,

> [o]n September 5, 1970, 12am-8am shift, the Mod's Run substation was energized for the first time since the explosion of November 20, 1968. The electrician (name withheld by request) reported that while energizing the substation he found evidence to indicate that the FEMCO fan alarm system for Mod's Run fan had been rendered inoperable prior to the explosion. The fan alarm system had been bridged with jumper wires; therefore, when the fan would stop or slow

3

down, there was no way of anyone knowing about it because the alarm system was bypassed[.]

Thereafter, in November 1970, survivors of the miners filed their first two lawsuits: one in Pennsylvania federal court and one in West Virginia state court. Eventually, both of these suits were dismissed. In 1978, a third lawsuit was filed in West Virginia federal court alleging that the cause of the explosion had been concealed by the defendant therein, Consolidation Coal Company ("Consol"); the third lawsuit ultimately was settled.

Investigations into the Farmington mine explosion continued through the 1990s, with MSHA issuing a final report in March 1990. The Petitioners claim that, in 2008, they first learned about Mr. Layne's memo indicating that the Mod's Run ventilation fan had been intentionally rewired to bypass the mine's alarm system. Further, the Petitioners allege that they did not learn the name of the person responsible for bypassing the mine's alarm system, or that said person was the mine's chief electrician and, thus, a member of mine management, until June 2014. The Petitioners then filed this proceeding in November 2014 in the Circuit Court of Marion County against Consol and the estate of the former chief electrician alleging "fraud, concealment and nondisclosure." Consol removed the case to federal court based on diversity jurisdiction, and the case proceeded through the District Court for the Northern District of West Virginia. By memorandum opinion and order signed March 31, 2017, the district

4

court granted Consol's motion to dismiss concluding that "the Plaintiffs' wrongful death claim is barred by the then applicable two-year limitation period, and was not tolled by either the discovery rule or the fraudulent concealment doctrine." *Michael v. Consolidation Coal Co.*, No. 1:14CV212, 2017 WL 1197828 (N.D. W. Va. Mar. 31, 2017) (unpublished mem. opinion and order).

The Petitioners then appealed to the United States Court of Appeals for the Fourth Circuit. By order entered August 15, 2018, the court of appeals certified two questions of law to this Court:

(1) Is a fraudulent concealment claim, as set forth in *Kessel v. Leavitt*, 204 W. Va. 95, 511 S.E.2d 720 (1998), cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under West Virginia Code §§ 55-7-5, 55-7-6 (1967)?

(2) If the answer to Question (1) is yes: Under the West Virginia discovery rule, does the statute of limitations for a fraudulent concealment claim begin to run against a corporate entity when a plaintiff (A) learns that the entity concealed the intentional act of an unidentified individual, which resulted in the death of other employees at the entity's workplace; or (B) discovers that the entity concealed both the intentional act and the identity of a particular employee, who allegedly acted at the direction of the entity, resulting in the death of other employees at the workplace?

In certifying these questions, the court of appeals declined to provide proposed answers therefor, instead ruling that no definitive West Virginia precedent exists to answer them. This Court then accepted the certified questions for consideration and decision.

5

## II.

## STANDARD OF REVIEW

The case *sub judice* is before this Court upon questions of law certified by the Fourth Circuit Court of Appeals. Insofar as the instant proceeding requires an analysis of the law, our review of such questions is plenary. "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998)." Syl. pt. 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017). *Accord* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified questions from a federal district or appellate court."). *See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Guided by this standard, we consider the questions certified as well as the parties' arguments with respect thereto.

## III.

## DISCUSSION

In its certification order, the court of appeals presents two questions for this Court's resolution:

(1) Is a fraudulent concealment claim, as set forth in *Kessel v. Leavitt*, 204 W. Va. 95, 511 S.E.2d 720 (1998), cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under West Virginia Code §§ 55-7-5, 55-7-6 (1967)?

(2) If the answer to Question (1) is yes: Under the West Virginia discovery rule, does the statute of limitations for a fraudulent concealment claim begin to run against a corporate entity when a plaintiff (A) learns that the entity concealed the intentional act of an unidentified individual, which resulted in the death of other employees at the entity's workplace; or (B) discovers that the entity concealed both the intentional act and the identity of a particular employee, who allegedly acted at the direction of the entity, resulting in the death of other employees at the workplace?

Upon review of these questions, we find it necessary to reformulate the first certified question under our power to do so.

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*[.]

Syl. pt. 3, in part, *Kincaid v. Mangum,* 189 W. Va. 404, 432 S.E.2d 74 (1993).

Reformulation is necessary because the case cited in the first certified question, *Kessel v. Leavitt*, 204 W. Va. 95, 511 S.E.2d 720 (1998), recognized a very specific cause of action for tortious interference with a parental or custodial relationship, and not fraudulent concealment, generally. *See* Syl. pt. 7, *Kessel*, 204 W. Va. 95, 511 S.E.2d 720 ("To make out a *prima facie* claim for tortious interference with parental or custodial relationship, the complaining parent must demonstrate: (1) the complaining parent has a right to

7

establish or maintain a parental or custodial relationship with his/her minor child; (2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights; (3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and (4) damages resulted from such interference."). Thus, *Kessel* is distinguishable from, and not instructive to, our resolution of the case *sub judice*. Accordingly, we reformulate the first certified question as follows:

> (1) Is a fraudulent concealment claim cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under West Virginia Code §§ 55-7-5, 55-7-6 (1967)?

As the ensuing discussion explains further, we need not reformulate, or answer, the second certified question.

Turning now to the merits of the first certified question, as reformulated, it goes without saying that an analysis of the wrongful death statute, as it existed at the time of the events at issue herein, is a necessary prerequisite to the resolution of this query. We long have recognized that a cause of action for wrongful death is entirely created by statute: "the cause of action did not exist at common law, but is created by statute." *Lambert v. Ensign Mfg. Co.*, 42 W. Va. 813, 817, 26 S.E. 431, 432 (1896), *overruled on*

8

*other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001). Indeed, "[a]t common law there was no right of action for damages for injury occasioned by the death of a person by a wrongful act." *Baldwin v. Butcher*, 155 W. Va. 431, 433, 184 S.E.2d 428, 429 (1971). Moreover, "there were no enactments in the United States creating the right of recovery for death by wrongful act until after the British Parliament passed Lord Campbell's Act in 1846." *Rosier v. Garron, Inc.*, 156 W. Va. 861, 866-67, 199 S.E.2d 50, 54 (1973), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681. In this regard, we specifically have held that "Chapter 103 of the Code (sections 5, 6, p. 725, Ed. 1891) is the West Virginia Lord Campbell's act, creating a cause of action where none existed at common law for wrongfully causing the death of a person[.]" Syl. pt. 1, in part, *Lambert*, 42 W. Va. 813, 26 S.E. 431. *Accord Baldwin*, 155 W. Va. at 433-34, 184 S.E.2d at 429 ("As no right of action for death by a wrongful act existed at common law, the right or cause of action for wrongful death, if maintainable, exists under and by virtue of the provisions of the wrongful death statute of this State, Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended[.]").

The foundational statute recognizing a cause of action for wrongful death that was in effect at the time of the 1968 explosion remains in force today and provides as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the

9

person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death. Any right of action which may hereafter accrue by reason of such injury done to the person of another shall survive the death of the wrongdoer, and may be enforced against the executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrongdoer himself in his lifetime, or by bringing an original suit against his personal representative after his death, whether or not the death of the wrongdoer occurred before or after the death of the injured party.

W. Va. Code § 55-7-5 (LexisNexis 2016).

The corollary statute, W. Va. Code § 55-7-6, which allows a deceased person's survivors to bring a cause of action for wrongful death, defines the time limits for filing such an action, and establishes the damages that may be awarded in such a case, has been amended several times since 1968. The 1967 version of § 55-7-6, which was the statute in effect in 1968, provides:

Every such action shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith. Where the personal representative was duly appointed in another state, territory, or district of the United States, or in any foreign country, such personal representative shall, before the action is heard, post

10

bond, with a corporate surety thereon authorized to do business in this state, in a penal sum to be determined by the court, conditioned that such personal representative shall pay all costs adjudged against him and that he shall comply with the provisions of the third paragraph of this section.  In every such action the jury may award such damages as they deem fair and just, not exceeding ten thousand dollars, and the amount recovered shall be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate.  In addition, the jury may award such further damages, not exceeding the sum of one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent distributee or distributees of such deceased person, and shall be distributed as though part of the decedent's estate to decedent's dependent distributees in the proportions provided by the laws of descent and distribution.

In every such action and in addition to the damages awarded pursuant to the foregoing provisions hereof, the personal representative of the deceased shall be entitled to recover the reasonable funeral expenses of such deceased person and the reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death.

In its verdict the jury shall set forth separately the amount of damages, if any, awarded by it for reasonable funeral, hospital, medical and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death, and any such amount recovered for such expenses shall be so expended by the personal representative.  Except as provided in the preceding sentence, the amount recovered in accordance with the provisions of this section shall not be subject to any debts or liabilities of the deceased.

Every such action shall be commenced within two years after the death of such deceased person.

The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the effective date hereof.

W. Va. Code § 55-7-6 (Acts of the Fifty-Eighth Legislature of West Virginia, Regular Session, 1967).

As the subject cause of action for wrongful death is created entirely by statute, our analysis is guided by the rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In other words, "[t]he basic and cardinal princip[le], governing the interpretation and application of a statute, is that the Court should ascertain the intent of the Legislature at the time the statute was enacted, and in the light of the circumstances prevailing at the time of the enactment." Syl. pt. 1, *Pond Creek Pocahontas Co. v. Alexander*, 137 W. Va. 864, 74 S.E.2d 590 (1953). Thus, "[i]f the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery." Syl. pt. 4, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W. Va. 326, 472 S.E.2d 411 (1996). In such case, the plain meaning of the statute is to be applied without interpretation by the Court: "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

We previously have determined that, in recognizing a cause of action for wrongful death, W. Va. Code § 55-7-5 requires the satisfaction of two distinct elements:

> Under the express provisions of the wrongful death statute, in order to maintain an action for wrongful death there must be the death of a person and the death must be caused by such wrongful act, neglect or default as would, if death had not ensued, have entitled the party injured to maintain such action to recover damages for such wrongful death.

*Baldwin v. Butcher*, 155 W. Va. at 437, 184 S.E.2d at 431-32. *See also Hoover's Adm'x v. Chesapeake & Ohio Ry. Co.*, 46 W. Va. 268, 271, 33 S.E. 224, 225 (1899) ("While the real cause of action is the negligent injury, it is not committed until it result in death, and then the action accrues to the administrator, and not until then."). Injecting an additional factor alleging fraudulent concealment of the wrongful conduct purportedly leading to the decedent's death is simply not part of the statutory lexicon, and we are not at liberty to add such language. In other words, "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker,* 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citations omitted). *See also State ex rel. Frazier v. Meadows,* 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written."); Syl. pt. 1, *Consumer Advocate Div. of Pub. Serv. Comm'n of West Virginia v. Public Serv. Comm'n of West Virginia*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an

13

administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").

Moreover, while the Petitioners assert that the claim they seek to prosecute herein is one for fraudulent concealment, it very surely is rooted in a cause of action for wrongful death given that the first certified question, itself, refers to the plaintiffs' lost claim for wrongful death. Furthermore, the damages that the Petitioners seek herein are in the amount specifically permitted by the wrongful death statute in effect in 1968. In this regard, the Petitioners' underlying complaint specifically alleges that the "Defendants deprived [the] plaintiffs of their right to obtain relief against [the] defendants under West Virginia's wrongful death statute" and seeks damages "[p]ursuant to W. Va. Code § 55-7-6 (1967), [of] one hundred and ten thousand dollar[s] ($110,000.00) per class member for the wrongful death of each deceased coal miner[.]" This language is consistent with the 1967 version of W. Va. Code § 55-7-6, which provided damages for a wrongful death claim as follows:

> The wrongful death statute of this state . . . by Section 6 permits the recovery of such damages as a jury may deem fair and just not exceeding $10,000, to be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate, and also permits damages not to exceed $100,000 for financial and pecuniary loss sustained by the dependent distributees of the decedent, and in addition reasonable funeral expenses and reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant which resulted in death.

14

*Baldwin*, 155 W. Va. at 441, 184 S.E.2d at 433-34 (discussing version of W. Va. Code § 55-7-6 in effect at time of 1968 mine explosion). *See also* W. Va. Code § 55-7-6 (defining damages awardable in wrongful death action).

Additionally, with respect to the timeliness of a wrongful death claim referenced in the first certified question, this Court repeatedly has recognized that another integral part of a wrongful death claim is that it must be filed within two years of the decedent's death:

> [T]he cause of action [for wrongful death] did not exist at common law, but is created by statute. The bringing of the suit within two years from the death of the person whose death has been caused by wrongful act is made an essential element of the right to sue, and it must be accepted in all respects as the statute gives it. And it is made absolute, without saving or qualification of any kind whatever. There is no opening for explanation or excuse. Therefore, strictly speaking, it is not a statute of limitation.

*Lambert*, 42 W. Va. at 817, 26 S.E. at 432-33 (citations omitted). *See also* W. Va. Code § 55-7-6 ("Every such action shall be commenced within two years after the death of such deceased person."). Such temporal filing period has been denominated a statute of repose, as distinguished from a statute of limitations, and is an essential element of the wrongful death claim, itself. *See Smith v. Eureka Pipe Line Co.*, 122 W. Va. 277, 280, 8 S.E.2d 890, 892 (1940) ("It is . . . clear that Code, 55-7-5 and 6, under our present decisions bear no relationship to statutes of limitation, and contain no language that would justify a joint construction therewith."), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681. In this regard, we specifically have held

that the statute's "proviso that any such action shall be commenced within two years after the death of such deceased person is an essential restraining element of the right of action given." Syl. pt. 1, in part, *Lambert*, 42 W. Va. 813, 26 S.E. 431. Reiterating this holding, we further concluded that "the two year limitation upon the bringing of an action for wrongful death is an integral part of the statute itself and creates a condition precedent to the bringing of an action which bears no relationship to statutes of limitation[.]" *Rosier*, 156 W. Va. at 866, 199 S.E.2d at 53.

While this Court has, in more recent years, recognized that this mandatory two-year filing period may be expanded in certain, narrowly defined circumstances,[2] these cases do not apply retroactively to expand the two-year filing period in the case *sub judice*. Although we have afforded decisions of this Court retroactive application, such retrospective effect generally is very narrowly and scrupulously applied to only those cases currently in litigation—and not to all cases in perpetuity or ad infinitum. *See*

---

[2]*See* Syl. pt. 2, *Miller v. Romero*, 186 W. Va. 523, 413 S.E.2d 178 (1991) ("The two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented."), *overruled by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001). *See also* Syl. pt. 8, *Bradshaw*, 210 W. Va. 682, 558 S.E.2d 681 ("In a wrongful death action, under the discovery rule, the statute of limitation contained in *W. Va. Code*, 55-7-6(d) [1992] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.").

*Caperton v. A.T. Massey Coal Co., Inc.*, 225 W. Va. 128, 156, 690 S.E.2d 322, 350 (2009) ("The Supreme Court of Appeals of West Virginia . . . adheres to the common law principle that, as a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties *in pending cases*." (emphasis added; internal quotations and citations omitted)); *Richmond v. Levin*, 219 W. Va. 512, 518-19, 637 S.E.2d 610, 616-17 (2006) (per curiam) ("The issue of retroactivity in this case is narrowly confined to cases pending in the circuit courts or on appeal to this Court . . . . In fact, we are not aware of any prior 'civil' decision of this Court that was made retroactive to cases in which the appeal period had expired. It is only in the context of criminal litigation that a new decision may be applied retroactive to cases in which the direct appeal period has expired. This is so because criminal defendants can make collateral attacks on final judgments through the writ of habeas corpus." (citation omitted)).

The opinions of this Court recognizing that the two-year wrongful death filing period may be altered in particularly enumerated circumstances—*Miller v. Romero*, 186 W. Va. 523, 413 S.E.2d 178 (1991), *overruled by Bradshaw*, 210 W. Va. 682, 558 S.E.2d 681, and *Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001)—were decided twenty-three years and thirty-three years, respectively, *after* the subject 1968 mine explosion. Insofar as the Petitioners' wrongful death claims are based on their decedents' deaths in 1968 and the damages they seek herein are those that they could have recovered under the wrongful death statute then in effect, we do not find that

17

decisions of this Court issued several decades later have any retroactive effect to revive their long-precluded wrongful death claims—particularly when the two-year filing period was an integral part of the wrongful death cause of action at that time.

Although we are sympathetic to the Petitioners' plight, because their wrongful death claims are a statutorily-created cause of action, we are bound by the directives of the Legislature and the parameters of such a claim as established by the legislative promulgation authorizing the same. *See* Syl. pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009) ("This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.").

Being that such a restrictive construction of the elements and filing limits for the bringing of a wrongful death cause of action are required by the plain language employed by the Legislature in enacting W. Va. Code § 55-7-5 and W. Va. Code § 55-7-6, we answer the first certified question in the negative: No, a fraudulent concealment claim is not cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under the West Virginia wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6. Having found that no cause of action for fraudulent concealment exists

18

in answer to the first certified question,[3] we need not reach the second certified question, which seeks to establish the statute of limitations applicable to such a claim.

## IV.

## CONCLUSION

For the foregoing reasons, we answer the questions certified by the United States Court of Appeals for the Fourth Circuit in its August 15, 2018 certification order, and reformulated by this Court, as follows:

(1) Is a fraudulent concealment claim cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under West Virginia Code §§ 55-7-5, 55-7-6 (1967)?

**ANSWER:** No. A fraudulent concealment claim is not cognizable when the alleged injury was the plaintiffs' loss of a timely claim for wrongful death under West Virginia Code §§ 55-7-5, 55-7-6 (1967).

(2) If the answer to Question (1) is yes: Under the West Virginia discovery rule, does the statute of limitations for a fraudulent concealment claim begin to run against a corporate entity when a plaintiff (A) learns that the entity concealed the intentional act of an unidentified individual, which resulted in the death of other employees at the entity's workplace; or (B) discovers that the entity concealed both the intentional act and the identity of a particular employee, who allegedly acted at the direction of the entity, resulting in the death of other employees at the workplace?

---

[3]Although we find no cause of action exists for fraudulent concealment with respect to wrongful death claims related to deaths that occurred in 1968 and that are governed by the wrongful death statutes then in effect, we do not address or decide whether a cause of action for fraudulent concealment exists in other contexts.

19

**ANSWER:** Certified Question 2 has been rendered moot by the Court's Answer to Certified Question 1 insofar as there is no fraudulent concealment claim for which a statute of limitations would begin to run.

Certified Questions Answered.