No. 20-0940    *State ex rel. Morgantown Operating Company, LLC v. Hon. Philip D. Gaujot, Judge*

**FILED**
**June 11, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jenkins, Chief Justice, dissenting:

In this original jurisdiction proceeding, the majority has denied the writ of prohibition sought by Morgantown Operating Co., LLC, and concluded that the two-year filing period established for wrongful death actions, set out in West Virginia Code section 55-7-6(d) (eff. 1992), applies to medical professional liability actions against a nursing home where the alleged injury resulted in death. The majority reached this conclusion despite the fact that such actions are governed by the West Virginia Medical Professional Liability Act ("MPLA"), found at West Virginia Code sections 55-7B-1 to 12, and despite the fact that the MPLA has its own governing statute of limitations for such actions, which is set out at West Virginia Code section 55-7B-4(b) (eff. 2017). Because I believe the Legislature intended the MPLA limitations period to control an action such as this, I would grant the requested writ of prohibition. Accordingly, I respectfully dissent.

To the extent that the Legislature has not expressly stated which statute of limitations properly applies, resolution of this question is a matter of statutory construction. *See* Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied."). It is well established that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the

1

Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). As such, "[t]he basic and cardinal princip[le], governing the interpretation and application of a statute, is that the Court should ascertain the intent of the Legislature at the time the statute was enacted, and in the light of the circumstances prevailing at the time of the enactment." Syl. pt. 1, *Pond Creek Pocahontas Co. v. Alexander*, 137 W. Va. 864, 74 S.E.2d 590 (1953). I believe that a proper examination of the current version of the relevant MPLA provisions demonstrates that the Legislature intended that the one-year statute of limitations set out in the MPLA be applied to actions alleging medical professional liability against a nursing home, and other similar entities set out in West Virginia Code section 55-7B-4(b), when the alleged injury resulted in death.

I recognize that in 1991 this Court commented, but did not hold, that the filing period for wrongful death actions applied to a claim of death arising under the MPLA:

> while we concede that the Act (MPLA) addresses both malpractice and actions involving death, it does not supplant the two-year filing period for wrongful death found in W. Va. Code § 55-7-6. Nothing in W. Va. Code § 55-7B-4, which sets forth the limitations for actions brought for "Health care injuries," provides for circumstances involving death cases, although both "injury" and "death" are discussed throughout the rest of the Act[.]

*Miller v. Romero*, 186 W. Va. 523, 527, 413 S.E.2d 178, 182 (1991), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001). This conclusion

2

by the *Miller* Court was based upon the absence of the word "death" from the MPLA statute of limitations provision then in effect: "the omission of the word 'death' from W. Va. Code § 55-7B-4 must mean that the section applies only to injury cases and the legislature intended W. Va. Code § 55-7-6 to remain the applicable provision for limitations of actions involving wrongful death." *Id.*[1]

Notably, however, the version of the MPLA in effect when *Miller* was decided, which was the 1986 version, referred to the term "injury" in conjunction with the statute of limitations but did not include a definition of that term.[2] After the *Miller* decision was handed down, the MPLA was amended in 2003, and the following definition for the

---

[1] The portion of West Virginia Code section 55-7B-4 being interpreted by the *Miller* Court stated:

> "(a) A cause of action for *injury* to a person alleging medical professional liability against a health care provider arises as of the date of *injury*, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such *injury*, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such *injury*, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of *injury*."

*Miller v. Romero*, 186 W. Va. 523, 527, 413 S.E.2d 178, 182 (1991), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001) (quoting W. Va. Code § 55-7B-4 (eff. 1986)).

[2] See note 1, *supra*, for the relevant text of the 1986 version of West Virginia Code section 55-7B-4.

term "medical injury" was added: "'Medical injury' means injury *or death* to a patient arising or resulting from the rendering of or failure to render health care." W. Va. Code § 55-7B-2(h) (eff. 2003) (emphasis added). *See also* W. Va. Code § 55-7B-2(h) (eff. 2017) (same). Based upon this post-*Miller* definition, I believe the language "injury to a person alleging medical professional liability," as used in the subject MPLA statute of limitations provision, West Virginia Code section 55-7B-4(b), now reflects a legislative intent that the MPLA, as opposed to the wrongful death statute, provides the appropriate limitations period for a cause of action for medical professional liability where the alleged harm is death:

> A cause of action for *injury to a person alleging medical professional liability* against a nursing home, assisted living facility, their related entities or employees or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees arises as of the date of injury, except as provided in subsection (c) of this section, and must be commenced within one year of the date of such injury, or within one year of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of injury.

W. Va. Code Ann. § 55-7B-4(b) (eff. 2017) (emphasis added). I am unpersuaded by any effort to interpret the term "injury" in section 55-7B-4(b) as anything other than "medical injury." The MPLA was enacted to govern medical professional liability actions, in other

words, medical injuries,[3] which has been defined in the MPLA to include death. *See* W. Va. Code § 55-7B-2(h). Moreover, section 55-7B-4(b) establishes the statute of limitations for "[a] cause of action for injury to a person *alleging medical professional liability* against a nursing home . . . ." (Emphasis added). The MPLA's definition of "medical professional liability" also includes death resulting from health care:

> "Medical professional liability" means any liability for damages resulting from *the death* or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i) (emphasis added). Therefore, as used in W. Va. Code 55-7B-4(b), the term "injury" was clearly intended by the Legislature to include death that resulted from "the rendering of or failure to render health care," W. Va. Code § 55-7B-2(h), and, therefore, is synonymous with the term "medical injury." For these reasons, I would apply the one-year limitations period provided by the MPLA, and, because the complaint in this

---

[3] Indeed, the Legislature has expressly declared its purpose to balance the needs of West Virginia citizens to the best medical care available and to compensation for injuries caused by negligent and incompetent acts of health care providers with the needs of health care providers to adequate and affordable liability insurance coverage. *See* W. Va. Code § 55-7B-1 (eff. 2015) ("It is the duty and responsibility of the Legislature to balance the rights of our individual citizens to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers and health care facilities who can themselves obtain the protection of reasonably priced and extensive liability coverage.").

matter was filed outside of that limitations period, I would grant the writ of prohibition. I am authorized to state that Justice Armstead joins me in this dissent.